**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IMAGE DENTAL, LLC, individually and on Behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No.: 1:20-cv-2759 |
| v. | ) ) | Hon. Steven C. Seeger |
| CITIZENS INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**DEFENDANT CITIZENS INSURANCE COMPANY OF AMERICA'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**
**PLAINTIFF'S SECOND AMENDED COMPLAINT OR, IN THE ALTERNATIVE,**
**TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS**

Todd S. Schenk
Jennifer L. Smith
Tressler LLP
233 S. Wacker Drive, 61st Floor
Chicago, Illinois 60606
312-627-4000
tschenk@tresslerllp.com
jsmith@tresslerllp.com

Michael Menapace *(pro hac vice)*
Robyn E. Gallagher *(pro hac vice)*
Wiggin and Dana LLP
20 Church Street, 16th Floor
Hartford, CT 06103
860-297-3700
mmenapace@wiggin.com
rgallagher@wiggin.com

*Attorneys for Defendant Citizens Insurance Company of America*

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 8

FACTUAL ALLEGATIONS FROM THE SAC ................................................................. 9

    I.      Background ................................................................................... 9

    II.     Advisory Publications And Governmental Executive Orders ................................... 11

    III.    Image Dental's Policy ..................................................................... 12

STANDARD OF REVIEW ........................................................................................ 14

    I.      Rule 12(b)(6) Motion to Dismiss ................................................................ 14

    II.     Rule 23(d)(1)(D) Motion to Strike ............................................................... 14

ARGUMENT IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS ........................................... 15

    I.      Policy Interpretation ........................................................................ 15

    II.     There is No Coverage Under the Business Income or Extra ExpenseCoverages Because Plaintiff's Alleged Losses Were Not the Result of Direct Physical Loss of or Damage to a Covered Premises ..................................................................... 16

    III.    The Governor's Executive Orders, and Recommendations by Others, Were Not a "Physical" Loss of or Damage to Property as a Matter of Law ............................... 23

    IV.    The Period of Restoration Definition is Further Evidence that "Physical" Loss or "Physical" Damage Requires a Tangible Change in the Physical Characteristics of the Premises ........................................................................... 24

    V.     There is No Coverage Under the Civil Authority Additional Coverage Part............ 25

    VI.    The Virus or Bacteria Exclusion Applies to Plaintiff's Claims ................................... 26

    VII.   The Ordinance or Law Exclusion Prevents Coverage for Plaintiff's Claims............. 28

    VIII.  The Acts or Decisions Exclusion Prevents Coverage for Plaintiff's Claims ............. 28

    IX.    Plaintiff is not Entitled to Relief Under 215 ILCS 5/155 .......................................... 29

ARGUMENT IN SUPPORT OF RULE 23(d)(1)(D) MOTION TO STRIKE ......................................... 29

    I.      Plaintiff Cannot Meet The Commonality Prerequisite Because It Has Not Articulated A Legal Or Factual Issue Subject To Class-Wide Resolution. ................ 30

         1.    Highly Individualized Issues Abound ............................................... 30

             b.    The Claims Implicate Different Substantive State Laws .............. 31

             c.    The Proposed Class Members Belong to Different Industries...... 32

             d.    Plaintiff Admits individualized Proof is Required ......................... 32

             e.    Additional Individual Factors May Impact The Coverage Analysis ................................................................. 33

         2.    Image Dental Has Failed To Identify Any Common Issue ........................ 33

1

II.    Plaintiff Has Failed To Allege Any Of The Rule 23(b) Types of Classes....................38

    1.    Separate Adjudications of Coverage Claims Do Not Create Incompatible Standards Of Conduct Or Otherwise Impede Non-Parties.38

    2.    Inconsistent Judgments Would Not Establish Incompatible Standards of Conduct Pursuant to Rule 23(b)(1)(A) ................................................38

    3.    Nonparty Class Members Are Not Prevented From Protecting Their Interests Pursuant to Rule 23(b)(1)(B) ....................................................39

        4.    The Class Members Are Not Homogeneous, Thus Barring Certification Under Rule 23(b)(2) .................................................40

        5.    Common Questions Do Not Predominate Over Individualized Issues And a Class Is Not Superior Thus Barring Certification Pursuant To Rule 23(b)(3) .........................................................41

**CONCLUSION**................................................................................................**42**

**TABLE OF AUTHORITIES**

<u>Cases</u>

*10E, LLC v. Travelers Indemnity Co. of Connecticut*, Case No. 2:20-cv-04418-SVW-AS (C.D. Cal., August 28, 2020) ................................................................................................................... 19

*Advance Cable Co., LLC v. Cincinnati Ins. Co.,*
788 F.3d 743 (7th Cir. 2015) ................................................................................................. 17

*Alqaq v. Citimortgage, Inc.,*
No. 13 C 5130, 2014 WL 1689685 (N.D. Ill. Apr. 29, 2014) ................................................... 35

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ..................................................................................... 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................................... 23

*Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543 (7th Cir. 2009) .................. 15, 31

*Baker v. Kingsley,*
2006 WL 2927606, 2006 U.S. Dist. LEXIS 74266, (N.D.Ill. Oct. 10, 2006) ................................ 14

*Baxter Int'l, Inc. v. Am. Guar. & Liability Ins. Co.,* 369 Ill. App. 3d 700 (1st Dist. 2006) ............... 29

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) ................................................................................... 14

*Bodnar v. Lake Cty. Jail,*
No. 2:20-CV-157-PPS-APR, 2020 WL 1940742 (N.D. Ind. Apr. 22, 2020) ............................... 21

*Bowe Bell + Howell Co. v. Immco Employees' Ass'n,*
2005 WL 1139645 (N.D. Ill. May 11, 2005) ..................................................................... 38, 39

*Bridgestone/Firestone, Inc.,*
288 F.3d 1012 (7th Cir. 2002) ........................................................................................ 32, 42

*Briscoe v. Health Care Serv. Corp.,*
Case No. 16-cv-10294, 2020 WL 291361 (N.D. Ill. Jan. 21, 2020) .................................... 30, 33

*Buonomo v. Optimum Outcomes, Inc.,*
301 F.R.D. 292 (N.D. Ill. Mar. 17, 2014) ......................................................................... 14, 15

*Canopius US Ins., Inc. v. Yanhos, Inc.,*
2017 WL 2930495 (N.D. Ind. Jul. 10, 2017) ......................................................................... 37

*Cates v. Whirlpool Corp.,*
2017 WL 1862640 (N.D. Ill. May 9, 2017) ...............................................................35, 40, 41

*Cirino v. Ocwen Loan Servicing LLC,*
2020 WL 4558793 (9th Cir. Aug. 7, 2020) ........................................................................... 23

*City of Chicago v. Factory Mut. Ins. Co.,*
2004 WL 549447 (N.D. Ill. Mar. 18, 2004) .......................................................................... 26

*Compare Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 2017 WL 157858 (N.D. Ill. Jan. 12, 2017) ..................................................................................................................... 37

*Day v. Human Ins. Co.*,
  No. 19 C 3141, 2020 WL 2386761 (N.D. Ill. Jun. 1, 2020) ...................................................... 34

*Democracy Forward Found v. White House Office of Am. Innovation*, 256 F. Supp. 3d 61, n. 6
  (D.D.C. 2019) .............................................................................................................................. 11

*Dennis v. United States*,
  339 U.S. 162, 169 (1950) ........................................................................................................... 11

*Diesel Barbershop, LLC v. State Farm Lloyds*,
  Case No. 5:20-cv-461-DAE (W.D. Tex. August 13, 2020) ....................................................... 18

*Doe v. Guardian Life Ins. Co.*,
  145 F.R.D. 466 (N.D. Ill 1992) .................................................................................................. 38

*Facebook, Inc. v. Teachbook.com LLC*,
  819 F. Supp. 2d 764 (N.D. Ill. 2011) .................................................................................. 10, 11

*Fiorentini v. Paul Revere Life Ins. Co.*,
  893 F.3d 476 (7th Cir. 2018) ...................................................................................................... 16

*Gavrilides Mgmt. Co. v. Michigan Ins. Co.*,
  Case No. 20-258-CB (Mich. Cir. Ct., Inghram County, July 1, 2020) ................................ 20, 29

*Gentry v. Carvajal*,
  No. 20-CV-00360-JPG, 2020 WL 3893803 (S.D. Ill. July 10, 2020) ......................................... 22

*Gentry v. Carvajal*,
  No. 20-CV-00360-JPG, 2020 WL 3893803 (S.D. Ill., July 10, 2020) ........................................ 21

*Gross v. Sec. Assocs. Int'l*,
  2009 WL 3837435, 2009 U.S. Dist. LEXIS 107279, (N.D.Ill. Nov. 17, 2009) ........................... 14

*Guthrie v. U.S. Government*,
  618 Fed. Appx. 612 (11th Cir. 2015) ......................................................................................... 23

*Huddleston v. Am. Airlines, Inc.*,
  No. 16-cv-09100, 2018 WL 4742097 (N.D. Ill. Oct. 2, 2018) ............................................ 15, 41

*Hylaszek v. Aetna Life Ins. Co.*,
  No. 95 C 5961, 1998 WL 381064 (N.D. Ill. Jul. 1, 1998) ......................................................... 39

*Jamie S. v. Milwaukee Pub. Schools*,
  668 F.3d 481 (7th Cir. 2012) ...................................................................................................... 34

*Kubilius v. Barilla Am., Inc.*,
  2019 WL 2861886 (N.D. Ill. Jul. 2, 2019) ................................................................................. 32

*Landmark Hosp., LLC v. Cont'l Cas., Co.*,
  No. CV 01-0691 GLTMLGX, 2002 WL 34404929  (C.D. Cal. July 2, 2002) ......................... 28, 29

*Lee v. Children's Place Retail Stores, Inc.*,
  No. 14 C 3258, 2014 WL 5100608 (N.D. Ill. Oct. 8, 2014) ...................................................... 15

*Lemon v. Int'l Union of Operating Engr's,*
  *Local No. 139*, 219 F.3d 577 (7th Cir. 2000) ........................................................... 40

*Leo v. Laidlaw,*
  38 F.Supp.2d 675 (N.D. Ill. 1999) ....................................................................... 14

*Malaube, LLC v. Greenwich Ins. Co.,*
  Case No. 20-22615-Civ-Williams/Torres, (S.D. Fla., August 26, 2020) .................................... 18

*Malden v. Bank of Am., N.A.,*
  2019 WL 7401452, 2019 U.S. Dist. LEXIS 223261, (N.D.Ill. Dec. 30, 2019) ............................... 14

*Mallestone v. Lightning Rod Mut. Ins. Co.,*
  175 Ohio App. 3d 23, 884 N.E.2d 1130 (Ohio Ct. App. 2008) ................................................ 20

*Mama Jo's Inc. v. Sparta Ins. Co.,*
  No. 18-12887, 2020 WL 4782369 (11th Cir., Aug. 18, 2020) ................................................ 22

*Martin v. Illinois Farmers Ins.,*
  318 Ill. App. 3d 751 (1st Dist. 20000) ................................................................. 29

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of America*, Case No. 2:20-cv-00401-FtM-66NPM
  (M.D. Fla., September 2, 2020) ......................................................................... 27

*McCaster v. Darden Restaurants, Inc.,*
  845 F.3d 794 (7th Cir. 2017)............................................................................ 30

*Mutlu v. State Farm Fire & Cas. Co.,*
  337 Ill. App. 3d 420, 431, 785 N.E.2d 951 (2003) ...................................................... 17

*Outboard Marine Corp. v. Liberty Mut. Ins. Co.,*
  154 Ill.2d 90 (1992) ................................................................................... 16

*Penn. Chiropractic Ass'n*, 286 F.R.D at 376 ........................................................ 39, 40

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618 (6th Cir. 2011) ............... 39

*Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561 (7th Cir. 1998) . 15

*Rose's 1, LLC v. Erie Insurance Exchange*,
  Case No. 2020 CA 002424 B (D.C. Super. Ct. August 6, 2020) ............................................ 17

*Schewe v. Home Ins. Co.,*
  80 Ill.App.3d 829 (5th Dist. 1980) .................................................................... 16

*St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 146 Ill.App.3d 107  (1st
  Dist. 1986) ............................................................................................ 16

*Studio 417, Inc. v. The Cincinnati Ins. Co.,*
  Case No. 20-cv-3127-SRB, Doc. 40 (W.D. Mo. Aug. 18, 2020) ............................................. 22

*Travelers Ins. Co. v. Eljer Mfg., Inc.,*
  197 Ill.2d 278 (2001) ............................................................................. 16, 17

*Turek Enterprises, Inc. v. State Farm Mut. Automobile Ins. Co.*, Case No. 20-11655 (E.D. Mich., September 3, 2020) ........................................................................................................ 19

*Uhlich Children's Adv. Network v. Nat'l Union Fire Ins. Co.*, 398 Ill.App.3d 710 (1st Dist. 2010) .. 29

*Universal Image Prods., Inc. v. Fed. Ins. Co.,*
475 Fed. Appx. 569 (6th Cir. 2012) ..................................................................................... 20

*Van v. Ford Motor Co.,*
332 F.R.D. 249 (N.D. Ill. 2019) .................................................................................... 35, 42

*W. Food Stores, Inc. v. Hartford Fire Ins. Co.,*
417 F.2d 1219 (7th Cir. 1969) ........................................................................................... 29

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) ...........................................................30, 33, 34, 35, 36, 37, 40

*Wehrle v. Cincinnati Ins. Co.,*
719 F.3d 840 (7th Cir. 2013) ............................................................................................. 16

*Westfield Ins. Co. v. Vandenberg,*
796 F.3d 773 (7th Cir. 2015) ....................................................................................... 16, 33

*Williams v. Chartwell Fin. Servs. ltd.,*
204 F.3d 748 (7th Cir. 2000) ............................................................................................. 42

*Williams v. TGI Fridays, Inc.,*
Case No. 16 C 4286, 2018 WL 6528022 (N.D. Ill. Dec. 12, 2018) ............................................. 30

*Windridge of Naperville Condo v. Philadelphia Indemn. Ins. Co.*, 932 F.3d 1035 (7th Cir. 2019).. 17

*Windridge of Naperville Condominium Assoc. v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035 (7th Cir. 2019) .............................................................................................................................. 17

*Worldwide Sorbent Prod., Inc. v. Invensys Sys., Inc.*, No. 1:13-CV-252, 2014 WL 12597394 (E.D. Tex. July 31, 2014) ............................................................................................................... 28

*Wright v. Family Dollar, Inc.,*
No. 10 C 4410, 2010 WL 4962838 (N.D. Ill. Nov. 30, 2010) .................................................... 15

*Yasmin and Yaz (Drospirenone) Marketing,*
275 F.R.D. at 275 ............................................................................................................... 42

Other Authorities

FL Div. of Emergency Mgmt.,
*Additions of Essential Services to the list under EO 20-91* (Apr. 9, 2020) ............................... 31

Rules

Fed. R. Civ. P. 23(b) .....................................................................................................9, 30, 38

Fed. R. Civ. P. 23(b)(1)(A) ................................................................................................. 38, 39

Fed.R.Civ.P. 12(b)(6) ........................................................................................................... 8, 14

Fed.R.Civ.P. 23(d)(1)(D)..............................................................................................................8

Rule 23(b)(1)..............................................................................................................................38

Rule 23(b)(1)(B) ........................................................................................................................39

Rule 23(b)(2)....................................................................................................................... 40, 41

Defendant, Citizens Insurance Company of America ("Citizens"), by and through its attorneys, Todd S. Schenk and Jennifer L. Smith of Tressler LLP and Michael Menapace and Robyn Gallagher of Wiggin and Dana LLP, hereby submits its Memorandum in support of its Motion to Dismiss Plaintiff, Image Dental, LLC's ("Plaintiff" or "Image Dental"), Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike Plaintiff's class allegations pursuant to Federal Rule of Civil Procedure 23(d)(1)(D).  In support thereof, Citizens states as follows:

## INTRODUCTION

In 2020, COVID-19 swept the United States, killing thousands and causing states around the country to issue stay-at-home orders.  The stay-at-home orders, which varied state-to-state and month-to-month, were issued to protect public health. The orders were not issued to safeguard the integrity of physical structures.

The policy that Plaintiff purchased from Citizens is triggered when there is direct physical loss of or damage to property.  The policy also contains applicable exclusions. Just like the First Amended Complaint, the SAC fails to allege direct physical loss of or damage to property caused by any covered cause of loss. Moreover, even if the policy were triggered by direct physical loss or damage, the Virus Exclusion precludes coverage.  Therefore, the SAC should be dismissed.

Plaintiff brings this lawsuit as a putative class action on behalf of three "nation-wide" classes involving insureds with different types of coverage, subject to different policy language, domiciled in different states, that are subject to different stay-at-home orders, operate across different industries (to which the stay-at-home orders applied differently), have made different independent decisions about their continuing operations, bear the burden of proving that the

SARS-CoV-2 virus was present each individual class member's property, and suffered different amounts of alleged damages for different periods of closure. Plaintiff cannot meet the commonality prerequisite for a class action nor can any of the proposed classes fall into one of the three Fed. R. Civ. P. 23(b) class categories. Thus, even if the SAC is not dismissed in its entirety, the Court should strike the class allegations.

## FACTUAL ALLEGATIONS FROM THE SAC

### I.  BACKGROUND

Image Dental is the owner and operator of dental offices in Cicero, Chicago, Summit Argo, and Oakbrook, Illinois.  (*See* SAC, DE 32) Citizens issued a Businessowners Policy of insurance to Image Dental LLC, Policy No. OBC-H180952-00, with a policy period of 3/8/2020 to 3/8/2021 ("Policy"). (*See* Policy, Ex. 1)[1]  Image Dental decreased its operations when it stopped performing elective dental work during the COVID-19 pandemic.  (SAC, ¶46)

Plaintiff alleges, in conclusory fashion, that the physical presence of COVID-19 caused direct physical loss of or damage to each of its covered properties, and that the presence of COVID-19 made it necessary to shut down or limit access to the property for business operations due to damage to the property.  (SAC, ¶39) Similarly, the Plaintiff alleges that virus particles interact physically with a property, making it dangerous and less valuable, which results in a direct physical loss of property because use of the property becomes limited.  (SAC, ¶¶32, 33)

Plaintiff alleges that the Policy covers the loss of income its dental offices suffered as a result of the COVID-19 governmental "stay at home" orders under the Business Income, Extra

---

[1] Even though Plaintiff is asking the Court for a declaratory judgment that it has coverage under the Policy, it did not attach the Policy to the SAC.

Expense, and Civil Authority coverage parts. (SAC, ¶29) In addition, Plaintiff alleges that no Policy exclusions apply to its claim. (SAC, ¶30) Plaintiff also proposes three classes of Citizens policyholders, one each as to Business Income, Extra Expense, and Civil Authority coverages. (SAC, ¶¶ 51-53)[2]

Plaintiff alleges that it submitted a claim to Citizens, which Citizens then denied. (SAC, ¶49) Plaintiff also alleges that Citizens has waived its right to assert any coverage defenses because of its "blanket denial" of coverage to Plaintiff and others. (SAC, ¶68, 68 (sic), 74) However, the correspondence that Plaintiff relies on in the SAC for its allegation of a "blanket denial" of coverage is an email chain, dated March 16, 2020, which shows only that Dr. Sinan Razzak, Image Dental, LLC's sole member and Manager, reached only out to his insurance agent, Val O'Meara, at Southpoint Insurance in Orland Park, Illinois, asking whether he had coverage for any of his losses related to the pandemic. (Attachment to Dec. of Kerrie Smith, Ex. 2)[3] Ms. O'Meara wrote back on March 17, 2020, stating, "Your Business Owners Policy does not extend coverage for the business income due to the Coronavirus. Additionally, we are not aware of **any** insurance policy that would provide coverage, this is an industry wide standard." (Ex. 2) It is not alleged that Ms. O'Meara or Southpoint consulted with or advised Citizens of the Plaintiff's

---

[2] Plaintiff does not clearly describe the scope of the putative Business Income and Extra Expense classes. Plaintiff seeks to "[c]ertify the proposed *nationwide* Classes." SAC, ¶ 75(b). However, these classes reference the "Closure Orders" where "Closure Orders" is defined as the Illinois Orders. *Id.* at ¶ 46. Therefore, it is unclear whether Plaintiff seeks to certify a class of any business impacted by any closure order throughout the United States or whether it intends the class to be limited the Illinois Orders.

[3] Plaintiff incorporates and relies upon this correspondence in the SAC, but it does not attach it as an exhibit. The Court can rely on this correspondence because it is incorporated into the SAC by reference, DE 9, ¶¶ 7, 49, 66, 68, 66 [sic], 68 [sic], 72, and 74, *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 770 (N.D. Ill. 2011) (the Court can consider documents incorporated by reference).

inquiry regarding coverage. It is not alleged that Citizens had notice of, or approved, Ms. O'Meara's response to her client.

## II.    ADVISORY PUBLICATIONS AND GOVERNMENTAL EXECUTIVE ORDERS

On March 11, 2020, the World Health Organization declared COVID-19 to be a global pandemic. (SAC, ¶31) In response, the American Dental Association ("ADA") issued guidance recommending dentists postpone elective procedures. (SAC, ¶ 34; *see also* DE 9, ¶ 35 (the ADA extended its recommendation on April 1, 2020)).

On March 20, 2020, Governor JB Pritzker issued Executive Order 2020-10, requiring that all individuals living in Illinois stay at home except for essential activities or to operate an essential business[4]. (*See* Executive Order 2020-10, Ex. 3) When residents needed to leave their houses, they were required to maintain a social distance of at least six feet from any other person. The order permitted individuals to leave their houses in order to obtain services from certain health care providers, including dental offices. (Ex. 3, ¶7) Illinois subsequently extended its stay-at-home orders. Executive Order 2020-32 ¶ 7 (Apr. 30, 2020).

Plaintiff alleges that it stopped performing non-urgent dental procedures, based upon "recommendations" from the ADA and The Centers for Disease Control. (SAC, ¶¶34, 41, 42) Plaintiff still performed emergency procedures during this time, and the dental offices themselves were not ordered to be closed.

---

[4]The Court can rely on these Executive Orders both because they are incorporated through reference, SAC, ¶¶35, 45, and are subject to judicial notice. *Facebook, Inc. v. Teachbook.com LLC*, 819 F. Supp. 2d 764, 770 (N.D. Ill. 2011) (the Court can consider documents incorporated by reference); *Democracy Forward Found v. White House Office of Am. Innovation*, 256 F. Supp. 3d 61, n. 6 (D.D.C. 2019) (citing *Dennis v. United States*, 339 U.S. 162, 169 (1950)) (taking judicial notice of executive orders).

### III.     IMAGE DENTAL'S POLICY

The Policy contains the following relevant provisions:

**BUSINESSOWNERS COVERAGE FORM**

**SECTION I – PROPERTY**

**A.  Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause or Loss.

***

**5. Additional Coverages**

***

**f. Business Income**

When Business Income Coverage is provided under this policy:

**(1)  Business Income**

**(a)** We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration." The "suspension" must be caused by direct physical loss of or damage to a described premises shown in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Coverage Cause of Loss….

***

**g. Extra Expense**

When Business Income Coverage is provided under this Coverage Form:

**(1)** We will pay the necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss….

***

**i. Civil Authority**

When Business Income Coverage is provided under this Coverage Form:

**(1)** When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss or damage to property within one mile of the described premises, provided that both of the following apply:

**(a)** Access to the area immediately surrounding the damage property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damage property;

**(b)** The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

12

\*\*\*

**B. Exclusions**

    **1.** We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other clause or event that contributes concurrently or in any sequence to the loss.

        **a.** Ordinance or Law

            **(1)** The enforcement of or compliance with any ordinance or law:

                (a) Regulating the construction, use or repair of any property; or

                (b) Requiring the tearing down of any property, including the cost of removing its debris.

            **(2)** This exclusion, Ordinance or Law, applies whether the loss results from:

                (a) An ordinance or law that is enforced even if the property has not been damaged….

\*\*\*

        **i.** Virus or Bacteria

            **(1)** Any virus, bacterium or other microorganism that includes or is capable of inducing physical distress, illness or disease….

\*\*\*

    **3.** We will not pay for loss or damage caused by or resulting from paragraphs **a.**, **b.** and **c.** below.  But if an excluded cause of loss that is listed in paragraphs **a.**, **b.** and **c.** below, results in a Covered Cause of Loss, we will pay for the loss or damage by that Covered Cause of Loss.

\*\*\*

        **b. Acts or Decisions**

        Acts or decision, including the failure to act or decide, of any person, group, organization or governmental body.

\*\*\*

**G.  Property Definitions**

\*\*\*

    **41.** "Period of Restoration"

      **a.** Means the period of time that:

      **(1)** Begins:

        **(a)** After the number of hours shown as the Business Income Waiting Period in the Declarations after the time of direct physical loss or damage for Business Income Coverage; or

        **(b)** Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

      caused by or resulting from any Covered Cause of Loss at the described premises; and

      **(2)** Ends on the earlier of:

        **(a)** The date when the property at the described premises should be repaired, rebuilt or replaced (to a condition permitting occupancy) with reasonable speed and similar quality….

13

**b.** Does not include any increased period required due to the enforcement of any ordinance or law that:

**(1)** Regulates the construction, use or repair, or requires the tearing down of any property….

## STANDARD OF REVIEW

### I.  RULE 12(B)(6) MOTION TO DISMISS

When ruling on a motion to dismiss, the Court considers the facts alleged in the complaint and its attachments. *Malden v. Bank of Am., N.A.*, 2019 WL 7401452, 2019 U.S. Dist. LEXIS 223261, *2 (N.D.Ill. Dec. 30, 2019). The Court must accept the factual allegations as true and make reasonable inferences in favor of the plaintiff. *Baker v. Kingsley*, 2006 WL 2927606, 2006 U.S. Dist. LEXIS 74266, *8 (N.D.Ill. Oct. 10, 2006). The complaint, however, "must do more than solely recite the elements for a violation." *Gross v. Sec. Assocs. Int'l,* 2009 WL 3837435, 2009 U.S. Dist. LEXIS 107279, *3 (N.D.Ill. Nov. 17, 2009) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007)). Rather, the allegations in the complaint, when accepted as true, must show the "plausibility" of the plaintiff's claim for relief.  *Id*. (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Ultimately, if the complaint fails to state a claim upon which relief can be granted, the court must dismiss the case. *See Leo v. Laidlaw,* 38 F.Supp.2d 675, 677 (N.D. Ill. 1999); Fed.R.Civ.P. 12(b)(6).

### II.  RULE 23(d)(1)(D) MOTION TO STRIKE

The Court must determine whether to certify a class "[a]t an early practicable time after a person sues or is sued as a class representative." *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. Mar. 17, 2014). Where it is clear from the complaint, "a court may determine that class certification is inappropriate before the parties conduct class discovery." *Id.*

A motion to strike class allegations is made pursuant to Rule 23. *Buonomo,* 301 F.R.D. 292, 295 (N.D. Ill. Mar. 17, 2014). "Rule 23(a) performs a gate-keeping function for all class actions" wherein "the plaintiff must satisfy each of the four requirements of Rule 23(a): numerosity, commonality, typicality and adequacy of representation." *Huddleston v. Am. Airlines, Inc.*, No. 16-cv-09100, 2018 WL 4742097, at *3 (N.D. Ill. Oct. 2, 2018). Additionally, a plaintiff must also meet "one subsection of Rule 23(b)." *Id.*

Under Rule 23, the Court "does not presume that all well-pleaded allegations are true and can look beneath the surface of the complaint." *Huddleston*, 2018 WL 4742097, at *2 (quoting *Wright v. Family Dollar, Inc.*, No. 10 C 4410, 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010)). Even before discovery, a plaintiff bears the burden of establishing the suitability of class relief. *Wright*, 2010 WL 4962838, at *2; *Lee v. Children's Place Retail Stores, Inc.*, No. 14 C 3258, 2014 WL 5100608, at *2 (N.D. Ill. Oct. 8, 2014) (same); *but see Huddleston*, 2018 WL 4742097, at *2. Even if Citizens bears the burden of persuasion, it meets that burden here.

## ARGUMENT IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS

### I.    POLICY INTERPRETATION

Illinois law applies to insurance policies issued in Illinois to Illinois businesses such as the Plaintiff's. *See Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). The construction of an insurance policy is a question of law, not fact, and can be properly resolved by the court by way of a dispositive motion. *Roman Catholic Diocese of Springfield in Ill. v. Maryland Cas. Co.*, 139 F.3d 561, 565 (7th Cir. 1998). The insured has the burden of establishing that its loss falls within the terms of its insurance policy. *Fiorentini v. Paul Revere Life Ins. Co.*, 893

F.3d 476, 480 (7th Cir. 2018) (*citing St. Michael's Orthodox Catholic Church v. Preferred Risk Mut. Ins. Co.*, 146 Ill.App.3d 107, 109-110 (1st Dist. 1986)).

Clear and unambiguous terms and language must be taken in their plain, ordinary and popular sense. *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill.2d 90, 108 (1992). Courts must construe an insurance policy as a whole, while taking into account the type of insurance, risk undertaken and purchased, the subject matter of the insurance, and the purpose for the entire contract. *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 778 (7th Cir. 2015). Courts must assume that every provision of the policy was intended to serve a purpose, and should not interpret any one provision in a vacuum. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). Courts have no right to make a new contract for the parties. *Schewe v. Home Ins. Co.*, 80 Ill.App.3d 829, 832 (5th Dist. 1980).

II.     **THERE IS NO COVERAGE UNDER THE BUSINESS INCOME OR EXTRA EXPENSE COVERAGES BECAUSE PLAINTIFF'S ALLEGED LOSSES WERE NOT THE RESULT OF DIRECT PHYSICAL LOSS OF OR DAMAGE TO A COVERED PREMISES**

The Business Income and Extra Expense coverages of the Policy cover loss of business income and extra expenses sustained due to a suspension of the insured's operations only if that suspension is caused by a "direct physical loss of or damage to a described premises shown in the Declarations." Under its plain meaning, and as interpreted by Illinois law, the term "physical," as used in the phrase "direct physical loss of or damage to a described premises," modifies both "loss of" and "damage to." *Travelers Ins. Co. v. Eljer Mfg., Inc.,* 197 Ill.2d 278, 302-303 (2001). Thus, unless Plaintiff sustains direct physical loss of a covered premises or direct physical damage to a covered premises, the Policy is not triggered.

Illinois courts have held that a property sustains a "physical" injury when it is "altered in appearance, shape, color or in other material dimension." *Eljer Mfg., Inc.*, 197 Ill.2d at 301. Intangible damage is not considered a "physical" injury to property. *Id.* at 301-02. The Seventh Circuit has also interpreted "physical" loss to mean where there is a change in the physical aspect of a property, as opposed to an intangible change. *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743 (7th Cir. 2015) (interpreting policy under Wisconsin law); *Windridge of Naperville Condo v. Philadelphia Indemn. Ins. Co.*, 932 F.3d 1035, 1040 (7th Cir. 2019) (interpreting policy under Illinois law).

Mere economic damages do not fall within the scope of coverage. As the Seventh Circuit has stated, "direct physical loss" implies "property that has been damaged" and "generally refers to tangible as opposed to intangible property." *See Windridge of Naperville Condominium Assoc. v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1040 (7th Cir. 2019). "[P]roperty damage" cannot be based on loss of use alone, but requires some actual tangible physical damage. *See, e.g., Mutlu v. State Farm Fire & Cas. Co.*, 337 Ill. App. 3d 420, 431, 785 N.E.2d 951, 960 (2003) (loss of use of hot water not physical damage under CGL policy).

Several courts around the country have recently addressed coverage for COVID-19 related losses under insurance policies with the same or substantially similar language, and they have consistently found that coverage does not apply. For example, in *Rose's 1, LLC v. Erie Insurance Exchange*, Case No. 2020 CA 002424 B (D.C. Super. Ct. August 6, 2020), the Superior Court of the District of Columbia was asked to decide whether the restaurant plaintiffs' loss of income due to COVID-19 was a claim covered under Erie's policies of insurance. (Order Denying Plaintiffs' Motion for Summary Judgment and Granting Defendant's Cross-Motion for Summary Judgment,

attached as Ex. 4)  The restaurants alleged that they were forced to close their businesses due to the mayor's orders, thus depriving them of the use of their properties. The court held that the alleged claims were not covered under Erie's policies because the restaurants did not suffer from a "direct physical loss." (Ex. 4, pgs. 9-10)

The court reached a similar finding in *Diesel Barbershop, LLC v. State Farm Lloyds*, Case No. 5:20-cv-461-DAE (W.D. Tex. August 13, 2020), where the plaintiffs claimed that they suffered from losses from business interruption following local and state orders relating to COVID-19. (Doc. 29, August 13, 2020 Order Granting Defendant's Motion to Dismiss, attached as Ex. 5)  In granting State Farm's motion to dismiss, the court held that the plaintiffs' losses were not a "distinct, demonstrable physical alteration of the property." The court specifically stated that COVID-19 did not make a business uninhabitable. In addition, the court held that the Virus exclusion, which was unambiguous and enforceable, applied to exclude the plaintiffs' claims.

In *Malaube, LLC v. Greenwich Ins. Co.*, Case No. 20-22615-Civ-Williams/Torres, (S.D. Fla., August 26, 2020), the plaintiff sued Greenwich for failing to provide coverage for its loss of business income as result of COVID-19 government shutdowns which limited the full use of its restaurant. (Doc. 20, August 26, 2020, Report and Recommendations on Defendant's Motion to Dismiss, attached as Ex. 6) The court granted Greenwich's motion to dismiss, finding that the phrase "direct physical" modified both "loss" and "damage," and thus required actual damage to the property. The court found the definition of "period of restoration," which contained the words "repair" and "replace," provided further evidence that actual physical damage is required before business interruption coverage is paid. Finally, the court reasoned that the policy did not provide coverage for purely economic loss because the period of restoration did not include "any

increased period required due to the enforcement of any ordinance or law that … [r]egulates the construction, *use* or repair … of any property." (emphasis in original)

In *10E, LLC v. Travelers Indemnity Co. of Connecticut*, Case No. 2:20-cv-04418-SVW-AS (C.D. Cal., August 28, 2020), the plaintiff sued Travelers for lost business compensation under the Business Income and Extra Expense Coverage provision of the Travelers policy after governmental restrictions prohibited in-person dining at its restaurant. (Doc. 38, Order Granting Motion to Dismiss, August 28, 2020, attached as Ex. 7) The court granted Travelers' motion to dismiss, holding that, under California law, physical loss or damage occurs only when property undergoes a "distinct, demonstrable, physical alteration." The court stated that an insured cannot recover by attempting to artfully plead impairment to economically valuable use of property as physical loss or damage to property. The court specifically held that, even though the plaintiff alleged the novel coronavirus can infect and stay on surfaces or objects for up to twenty-eight days, it was not enough to support a physical alteration of such property. Finally, the court observed that, even if the Travelers policy covered "permanent dispossession," as the plaintiff argued, the plaintiff's restaurant remained opened and there was never permanent dispossession of the property.

Most recently, in *Turek Enterprises, Inc. v. State Farm Mut. Automobile Ins. Co.*, Case No. 20-11655 (E.D. Mich., September 3, 2020), the plaintiff sued State Farm to recover for loss of income and extra expense after its chiropractic office suspended all business operations in compliance with COVID-19 governmental orders. (September 3, 2020 Order Granting Defendants' Motion to Dismiss and Dismissing Plaintiff's Complaint with Prejudice, attached as Ex. 8) State Farm filed a motion to dismiss, arguing that the plaintiff's losses were not caused by

an accidental direct physical loss to Covered Property, and that even if they were, they are excluded by the Virus Exclusion, as well as other exclusions. The court granted State Farm's motion to dismiss, holding that the phrase "accidental direct physical loss to Covered Property" is an unambiguous term that plainly required the plaintiff to demonstrate some tangible damage to Covered Property, which it was unable to do.

Other courts have issued similar decisions. A court in Michigan recently decided that an insured's claim for business income loss related to the COVID-19 pandemic was not covered because "direct physical loss of or damage to" a premises requires something that alters the physical integrity of the property, but no such alteration of the insured's premises had occurred. *Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB (Mich. Cir. Ct., Inghram County, July 1, 2020) (Trans. on Hearing of the Def's Mot. for Summ. Disposition, July 1, 2020, and Order Granting the Motion, attached as Ex. 9) *See also Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 Fed. Appx. 569, 574-75 (6th Cir. 2012) (no "direct physical loss or damage" because there was no tangible damage to property, and the temporary conditions caused by the mold/microbial contamination did not render the building completely uninhabitable or unusable); *Mallestone v. Lightning Rod Mut. Ins. Co.*, 175 Ohio App. 3d 23, 884 N.E.2d 1130, 1144 (Ohio Ct. App. 2008) (no "physical loss to property" when the surface of insured's exterior wood siding had developed mold; the mold did not "attack" the wood, but had only grown on the surface, and could be removed through cleaning with basic household products, such as bleach).

In the SAC, Plaintiffs have added conclusory allegations that "the physical presence of COVID-19 caused direct physical loss of or damage to each covered property under the Policy of Image Dental and other Class members." (SAC, ¶39) As a preliminary matter, COVID-19 is the

disease caused by the SARS-CoV-2 virus, not a virus – thus, this allegation makes no sense. Assuming Plaintiffs are suggesting that SARS-CoV-2 virus particles were present at or near their covered premises (as well as the covered premises of *every* putative class member), this would still not constitue a "direct physical loss of or damage to" property. With respect to SARS-CoV-2, the Centers for Disease Control and Prevention ("CDC") advises individuals to clean their premises using soap and water, and then a household disinfectant.[5] Courts in the 7th Circuit have taken judicial notice of the CDC's guidelines on managing SARS-CoV-2 and COVID-19 in certain premises. *See Bodnar v. Lake Cty. Jail*, No. 2:20-CV-157-PPS-APR, 2020 WL 1940742, at *2 (N.D. Ind. Apr. 22, 2020) (taking judicial notice of the CDC's guidelines for managing SARS-CoV-2 and COVID-19 in correctional settings); *Gentry v. Carvajal*, No. 20-CV-00360-JPG, 2020 WL 3893803, at *2 (S.D. Ill., July 10, 2020) (even though a court must accept a plaintiff's well-plead facts as true and draw reasonable inferences in favor of the plaintiff, a court can also take judicial notice of information set forth in a governmental publication, such as the CDC's guidelines on how to manage COVID-19). If an employee on premises is found to be sick, which Plainitff does not allege, the CDC currently recommends closing off affected areas only (not the entire premises), and to wait 24 hours, if possible, before cleaning and disinfecting; the CDC advises that operations do not need to be closed. Therefore, even if SARS-CoV-2 particles were present at any of the Plaintiffs' premises, those particles could be readily removed with the use of standard

---

[5] *See* Centers for Disease Control and Prevention, Coronavirus Diease 2019 (COVID-19), "Cleaning and Disinfecting Your Facility" at https://www.cdc.gov/coronavirus/2019-ncov/community/disinfecting-building-facility.html.

cleaning procedures and products, which Plaintiffs, as dental offices, presumably use on a regular basis.[6]

Simply put, something which is surficial only and readily cleaned, i.e., maintenance, is not "direct physical loss of or damage to" property. This point was made recently in *Mama Jo's Inc. v. Sparta Ins. Co.*, No. 18-12887, 2020 WL 4782369 (11th Cir., Aug. 18, 2020). Mama Jo's alleged that it incurred extra expenses and suffered a loss of business when dust and debris generated by nearby roadway construction entered its restaurant premises. *Id.* at *1. The Sparta policy covered "the actual loss of Business Income you sustain due to the necessary 'suspension' of your 'operations' during the 'period of restoration,'" as long as the suspension is caused by "direct physical loss of or damage to covered property." *Id*. at *1-2. Mama Jo's argued that it had suffered a physical loss because it was required to clean its restaurant daily and repaint. The court, in holding that the claim was not covered, found that Mama Jo's had not suffered a "direct

---

[6] For these reasons, the decision in *Studio 417, Inc. v. The Cincinnati Ins. Co.*, Case No. 20-cv-3127-SRB, Doc. 40 (W.D. Mo. Aug. 18, 2020) (applying Missouri law), denying the insurer's motion to dismiss was wrongly decided and should not be considered persuasive here. In *Studio 417*, the insureds, owners of hair salons and restaurants, alleged that "it is likely" that its customers and employees were infected with COVID-19 and thereby infected the insured properties with that virus, which rendered their properties unsafe and unusable. The court held that the plaintiffs' complaint could survive a motion to dismiss because, in alleging that SARS-CoV-2 "is a physical substance" that "live[s] on" and is "active on inert physical surfaces" and is also "emitted into the air," they had adequately stated a claim for direct physical loss. *Id.* at 8. The court in *Studio 417* did not take judicial notice of the CDC guidelines, which state that the virus can be cleaned almost instantly from surfaces using a household disinfectant, and that the presence of SARS-Co-V-2 particles at a premises does not require the closure of operations. It is unclear whether the insurer in *Studio 417* brought the CDC guidelines to the court's attention. In any event, courts are not confined to the facts plead in a plaintiff's complaint when there are judicially-noticed scientific facts which contradict same. *See Gentry v. Carvajal*, No. 20-CV-00360-JPG, 2020 WL 3893803, at *2 (S.D. Ill. July 10, 2020). *Studio 417* is also distinguiable in that the policies at issue did not contain Virus exclusions.

physical loss" because "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Id*. at *8.

Here, Plaintiff does not allege an alteration in appearance, shape, color, or other material dimension or other physical of its dental offices. Even if the SARS-CoV-2 virus had been present at Plaintiff's dental offices, it would not constitute a "direct physical loss of or damage to" the premises caused by a Covered Cause of Loss, because there is no allegation, scientific evidence (or even a theory) that the virus physically alters Plaintiff's property.[7] SARS-CoV-2 particles are readily cleaned, making the surface on which they were located completely safe and appropriate for use. In that sense, the SARS-CoV-2 virus particle is no more "direct physical loss of or damage to property" than are germs or dirt on a kitchen counter. Therefore, even in its SAC, Plaintiff has failed to allege "direct physical loss of or damage to" a covered premises, which is a requisite element of the Business Income and Extra Expense coverages.

### III. THE GOVERNOR'S EXECUTIVE ORDERS, AND RECOMMENDATIONS BY OTHERS, WERE NOT A "PHYSICAL" LOSS OF OR DAMAGE TO PROPERTY AS A MATTER OF LAW

Plaintiff alleges that its dental offices stopped performing non-urgent dental procedures, per recommendations of the ADA and CDC, as well as Governor Pritzker's Executive Orders. The recommendations and orders may have temporarily limited the dental offices' operations, but they did not constitute a "physical" loss of or damage to a covered premises. Put differently, the

---

[7] Plainitff's claim of physical damage to its property should be ignored. It is well-established that a court may "dismiss an action that is so patently lacking in merit as to be frivolous." *Guthrie v. U.S. Government*, 618 Fed. Appx. 612, 617 (11th Cir. 2015). In other words, where "allegations…are sufficiently fantastic to defy reality as we know it; claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel," the court is not required to accept the allegations as true because in such instances, "improbability tips into frivolity." *Id*. (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (Souter, J. dissenting)). Critically here, "the court need not accept as true…allegations that contradict facts which may be judicially noticed by the court." *Cirino v. Ocwen Loan Servicing LLC*, 2020 WL 4558793, at *1 (9th Cir. Aug. 7, 2020) (reciting the standard for ruling on motions to dismiss).

23

recommended restrictions may have limited the use of the dental offices in order to prevent human-to-human spread of the virus, but they did not alter the physical characteristics of the premises. At most, the recommendations and orders caused temporary or partial limitations on the allowable operations at Plaintiff's premises, which is, at most, an economic loss not covered by the Policy.

IV.     THE PERIOD OF RESTORATION DEFINITION IS FURTHER EVIDENCE THAT "PHYSICAL" LOSS OR "PHYSICAL" DAMAGE REQUIRES A TANGIBLE CHANGE IN THE PHYSICAL CHARACTERISTICS OF THE PREMISES

When a covered loss occurs, the Policy applies to loss of business income during the "period of restoration." The Policy defines "period of restoration" as ending on "the date when the property at the described premises should be repaired, rebuilt or replaced (to a condition permitting occupancy) with reasonable speed and similar quality." In addition, "period of restoration" does not "include any increased period required due to the enforcement of any ordinance or law that regulates the … use … of any property." Construing the Policy as a whole and giving meaning to each provision, the definition of "period of restoration" reinforces the principle that there must be "direct physical loss of or damage to" the covered premises in order to trigger coverage, and makes clear that  a substance like a virus, which can be readily removed with household cleaning products, is not "direct physical loss of or damage to" property. The "period of restoration" ends at the time the physically lost or damaged property should be repaired, rebuilt, or replaced. Plaintiff's theory makes no sense in the context of a virus which can be removed from a surface or neutralized in a matter of seconds or minutes with soap and water or bleach-based cleaning products. The "period of restoration" is not extended by enforcement of any law or ordinance regulating the use of property. Thus, limitations on

Plaintiff's use of its dental offices as a result of the Governor's orders cannot be considered "direct physical loss of or damage to" those offices.

V.     THERE IS NO COVERAGE UNDER THE CIVIL AUTHORITY ADDITIONAL COVERAGE PART.

For there to be coverage under the Civil Authority coverage part, Plaintiff is required to plausibly plead that: (1) a Covered Cause of Loss caused damage to property other than the Plaintiff's dental practices; (2) a civil authority prohibited access to the dental offices due to direct physical loss or damage to property within one mile; (3) access to the area immediately surrounding the damaged property was prohibited by civil authority as a result of the damage, and the dental offices were within that area but not more than one mile away; and (4) the action of the civil authority was taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Loss that caused the damage, or the action was taken to enable the civil authority to have unimpeded access to the damaged property. Plaintiff has not established any of these required elements.

First, as described previously, neither the governmental orders and recommendations providing temporary limitations on Plaintiff's businesses, nor the SARS-CoV-2 virus itself, caused direct physical loss of or damage to property. Second, Plaintiff does not allege that it was prohibited from accessing its dental offices. Indeed, Plaintiff admits continuing to use its offices for various dental procedures. Third, no civil authority prohibited access to any areas surrounding Plaintiff's dental offices. The Governor's Executive Orders allowed Illinois residents to obtain essential services, and allowed Illinois businesess to perform essential services. Finally, there was no dangerous physical condition or damaged property at Plaintiff's offices. Neither the Governor's Orders nor the SARS-CoV-2 virus caused damage to any property.

Likewise, even if Plaintiff could establish the existence of some direct physical loss or damage within the terms of the insuring clause, Plaintiff would also need to demonstrate that any business suspension was necessarily *due* to the alleged physical damage caused by the virus contamination of its property. *See City of Chicago v. Factory Mut. Ins. Co.*, 2004 WL 549447, at *4 (N.D. Ill. Mar. 18, 2004) (business interruption due to the ground stop imposed by the FAA in order to prevent further terrorist attacks after the collapse of the World Trade Centers is not an insurable event according to the terms of the Policy). The SAC does not make any such allegation.

**VI.    THE VIRUS OR BACTERIA EXCLUSION APPLIES TO PLAINTIFF'S CLAIMS**

In the alternative, even if Plaintiff could establish direct physical loss of or damage to property, its claims are barred by the Policy's Virus Exclusion. The Virus Exclusion states that there is **no coverage** for: "loss or damage **caused directly or indirectly** by any of the following. Such loss or damage is excluded **regardless of any other clause or event that contributes** concurrently or in any sequence to the loss … any **virus**, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." [emphasis added] The Virus Exclusion is unambiguous on its face and must be enforced as written to preclude coverage here. Plaintiff admits that its alleged business interruption losses were caused directly or indirectly by the SARS-CoV-2 virus, which is definitely "capable of inducing physical distress, illness or disease." (SAC, ¶32-33, 39, 46) Under the anti-concurrent causation language of the exclusion section ("We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other clause or event that contributes concurrently or in any sequence to the loss."), it is irrelevant to this analysis whether the virus was a direct or indirect cause or if any covered cause also contributed to the alleged loss.

*Mauricio Martinez, DMD, P.A. v. Allied Ins. Co. of America*, Case No. 2:20-cv-00401-FtM-66NPM (M.D. Fla., September 2, 2020), is instructive. (September 2, 2020 Order, attached as Ex. 10) The plaintiff in *Martinez* owned a dental practice and was only able to perform emergency dental procedures during governmental shutdowns. The plaintiff sued Allied, alleging that the costs it incurred to decontaminate the dental office of the SARS-CoV-2 virus, as well as lost business income, were covered under its policy of insurance. The policy had a Virus exclusion that excluded coverage for "any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." The court held that, since Martinez's damages "resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfectation of the dental office of the virus is a 'Covered Cause of Loss' under the plain language of the policy's exclusion." The court granted Allied's motion to dismiss, holding that the plain language of the policy excludes coverage.  See also, *Turek Enterprises, supra* (attached Ex. 8) (even if the insured were able to demonstrate a direct physical loss to property, which it could not, its COVID-19 related claims would be excluded by the Virus Exclusion).

The business limitations and operational requirements imposed on Plaintiff's dental practice were put in place to slow the spread of the SARS-CoV-2 virus and are logically and factually the direct or indirect result of the virus itself. Therefore, even though the Plaintiff alleges a direct physical loss of or damage to property, the SAC should be dismissed based upon the Virus Exclusion.

VII.   **THE ORDINANCE OR LAW EXCLUSION PREVENTS COVERAGE FOR PLAINTIFF'S CLAIMS**

The Ordinance or Law Exclusion states that there is no coverage for "the enforcement of or compliance with any ordinance or law regulating the … use … or any property."  The exclusion applies "whether the loss results from an ordinance or law that is enforced even if the property has not been damaged…." Plaintiff alleges, at least in part, that its business was interrupted by the Governor's Executive Orders. The Executive Orders limit how businesses, such as Plaintiff's, operate and use their business premises. Since Plaintiff alleges its losses were the result of enforcement of a law regulating the use of its properties, the losses are excluded.

VIII.   **THE ACTS OR DECISIONS EXCLUSION PREVENTS COVERAGE FOR PLAINTIFF'S CLAIMS**

The Acts or Decisions Exclusion states that there is no coverage for "[a]cts or decisions, including the failure to act or decide, of any … governmental body." Plaintiff alleges that it reduced its business operations in response to the Governor's Executive Orders and certain recommendations by the ADA and CDC. Assuming, *arguendo*, that Plaintiff was legally compelled to reduce its business operations as a result of these orders and recommendations, the Acts or Decisions Exclusion would apply to exclude Plaintiff's claims because the resulting losses would be the result of the Governor's, or the ADA's, or the CDC's decisions. *See Worldwide Sorbent Prod., Inc. v. Invensys Sys., Inc.*, No. 1:13-CV-252, 2014 WL 12597394, at *12 (E.D. Tex. July 31, 2014) (the acts or decision exclusion was unambiguous and could apply to bar the policyholder's claim); *Landmark Hosp., LLC v. Cont'l Cas., Co.*, No. CV 01-0691 GLTMLGX, 2002 WL 34404929, at *2 (C.D. Cal. July 2, 2002) (same). Alternatively, if Plaintiff was not legally compelled to reduce its operations, but did so voluntarily, the Acts or Decisions Exclusion would still apply because Plaintiff's losses would be the result of its own acts or decisions. *Landmark Hosp., LLC*, 2002 WL

28

34404929, at *2 (the acts or decision exclusion applied to exclude damages caused by the insured's own negligent acts).

### IX.    PLAINTIFF IS NOT ENTITLED TO RELIEF UNDER 215 ILCS 5/155

Plaintiff's claim under 215 ILSC 5/155 also fails as a matter of law, and should be dismissed. *See Uhlich Children's Adv. Network v. Nat'l Union Fire Ins. Co.*, 398 Ill.App.3d 710, 722-23 (1st Dist. 2010). A *bona fide* dispute over coverage provides a basis for dismissal of a Section 155 claim. *See Martin v. Illinois Farmers Ins.,* 318 Ill. App. 3d 751, 753-54 (1st Dist. 20000) (affirming trial court's dismissal of Section 155 claim where a *bona fide* dispute over coverage existed); *Baxter Int'l, Inc. v. Am. Guar. & Liability Ins. Co.,* 369 Ill. App. 3d 700, 710 (1st Dist. 2006) ("An insurer's delay in settling a claim will not be deemed vexatious or unreasonable for purposes of section 155 sanctions where a *bona fide* dispute over coverage exists."). Illinois courts have repeatedly held that, "if there is a bona fide dispute" between the insured and the carrier as to the carrier's obligation under an insurance policy, no Section 155 violation is possible. *See W. Food Stores, Inc. v. Hartford Fire Ins. Co.*, 417 F.2d 1219, 1222 (7th Cir. 1969); *Baxter Int'l, Inc.*, 369 Ill. App. 3d at 710. Plaintiff is not entitled to relief under Section 155 because, as shown above, a *bona fide* dispute concerning coverage exists between Plaintiff and Citizens. *See Gavrilides Mgmt. Co. v. Michigan Ins. Co.*, Case No. 20-258-CB (Mich. Cir. Ct., Inghram County July 1, 2020) (attached as Ex. 9).

### ARGUMENT IN SUPPORT OF RULE 23(d)(1)(D) MOTION TO STRIKE

Citizens argues, in the alternative, that if this Court does not dismiss the SAC, the class allegations must be stricken because Plaintiff has failed to allege or otherwise present facts establishing the suitability of class relief.

The proposed "nationwide" classes implicate highly individualized legal and factual questions that are not amenable to class resolution. Plaintiff has failed to articulate a single "common contention that is 'capable of class wide resolution,'" thus failing the commonality prerequisite. *McCaster v. Darden Restaurants, Inc.*, 845 F.3d 794, 800 (7th Cir. 2017) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)). Moreover, Plaintiff's proposed classes do not fit into any of the three permissible types of class actions. *See* Fed. R. Civ. P. 23(b).

I. **PLAINTIFF CANNOT MEET THE COMMONALITY PREREQUISITE BECAUSE IT HAS NOT ARTICULATED A LEGAL OR FACTUAL ISSUE SUBJECT TO CLASS-WIDE RESOLUTION.**

"Commonality remains Plaintiffs' most difficult hurdle to class certification." *Briscoe v. Health Care Serv. Corp.*, Case No. 16-cv-10294, 2020 WL 291361, at *4 (N.D. Ill. Jan. 21, 2020). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Plaintiff's "common" issues are dependent upon legal and factual issues not amenable to class-wide resolution.

### 1. Highly Individualized Issues Abound

"[T]he individualized inquiry that would be required to resolve each of these claims precludes class certification." *Williams v. TGI Fridays, Inc.*, Case No. 16 C 4286, 2018 WL 6528022, at * (N.D. Ill. Dec. 12, 2018). Dissimilarities amongst putative class members abound.

#### a. Class Members Are Subject to Different State Closure Orders

Plaintiff purports to create three nationwide classes of insureds allegedly injured by Closure Orders that differ on a state-to-state basis.[8] (SAC ¶¶ 68(a), 68(a) (sic), 73) These closure orders are wildly variable. For example, as of June 8, 2020, dental offices in Illinois remained

---

[8] Citizens notes that none of the orders meet the policy requirement of direct physical loss/damage to property.

closed to routine services whereas dental offices in Ohio opened as of May 1, 2020. *Compare* Illinois Dept. of Public Health, *COVID-19 Oral and Dental Care* (May 4, 2020); *with* Ohio State Dental Board, *COVID-19 UPDATE – DENTAL OFFICES OPENING ON MAY 1, 2020* (Apr. 27, 2020). Insureds in other industries face starker differences, considered "essential" in some states but not in others. The State of Florida received significant publicity in making "[e]mployees at a professional sports and media production with a national audience . . ." an essential service. FL Div. of Emergency Mgmt., *Additions of Essential Services to the list under EO 20-91* (Apr. 9, 2020). Illinois has no comparable listing for national sports organizations. *See, e.g.,* Executive Order 2020-10. Closure orders may even vary within a given state. Indeed, here in the City of Chicago, there are different limitations than elsewhere in the State of Illinois.[9]

**b.** **The Claims Implicate Different Substantive State Laws**

Plaintiff alleges that, regardless of location, every Citizens insured is entitled to coverage. The Court applies Illinois choice-of-law rules, which follow "'the most significant contacts' test to choice-of-law disputes. In insurance-coverage cases, Illinois considers a variety of factors to determine which state's substantive law should apply, including the domicile of the insured, the place of delivery of the policy, and the place of performance." *Auto-Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). The most important factor is "the location of the insured risk." *Id.* Although the Policy issued to Plaintiff is subject to Illinois law, the Court would have to perform individualized choice of law assessments to determine which state's law applies to each member of the class.

---

[9] Chicago has implemented a program called "Protecting Chicago" in response COVID-19. This includes city-specific travel bans and it's own phased openings. See https://www.chicago.gov/city/en/sites/covid-19/home.html.

Given that Plaintiff seeks "nationwide" classes, the Court would have to apply many different state laws. This is, in and of itself, a basis for finding a lack of commonality. "No class action is proper unless all litigants are governed by the same legal rules. Otherwise the class cannot satisfy the commonality and superiority requirements of Fed. R. Civ. P. 23(a), (b)(3)." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002); *see also Kubilius v. Barilla Am., Inc.*, 2019 WL 2861886, at *2 (N.D. Ill. Jul. 2, 2019).

### c. The Proposed Class Members Belong to Different Industries

The classes also fail because purported class-members come from different industries, creating individualized issues that are not amenable to class wide resolution.

The proposed classes include both essential and non-essential businesses. This distinction controls whether the insured was able to remain open, partially open, or was wholly closed, which is relevant to coverage. *See* Policy ¶ A.5.i.(a) (civil authority coverage applies where an insured is prohibited from accessing the premises).[10] Some of the proposed class members, Plaintiff included, were permitted access to their properties for certain purposes, while others were not.

### d. Plaintiff Admits individualized Proof is Required

Plaintiff alleges "[t]he physical presence of COVID-19 caused direct physical loss of or damage to each covered property under the Policy of Image Dental and other Class members." (SAC ¶ 39) While Plaintiff may believe this allegation is sufficient to trigger coverage under the Policy's physical loss/damage requirement (it isn't), this allegation is fatal to its class allegations.

---

[10] Citizens does not believe there is coverage for any set of individualized facts because of the Virus Exclusion. *See supra*. If, however, the Court disagrees, these issues will be subject to individual discovery and litigation.

Under Plaintiff's theory, it would have the burden to prove that the SARS-CoV-2 virus was present at each class member's property. It is difficult to imagine a putative class action subject to more individualized proof.

### e. Additional Individual Factors May Impact The Coverage Analysis

Additional individualized issues also prevent class treatment.[10] Insurance coverage cases require interpretation of the specific policy language. *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 77-78. Different policy language, therefore, changes the coverage analysis. Citizens does not issue one standard property insurance policy, and any particular policy may be modified any number of ways by endorsement. Likewise, a coverage analysis depends on application of the facts of a specific claim to the policy, adding another layer of complexity.

### 2. Image Dental Has Failed To Identify Any Common Issue

Plaintiff identifies seven purportedly "common" questions, SAC ¶ 58, none of which satisfies commonality. "Any competently crafted class complaint literally raises common 'questions.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 349. "'What matters to class certification . . . is not the raising of common 'questions' – even in droves – but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Id.* at 350 (emphasis in original). The claims "must depend upon a common contention . . . [meaning] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350; *see also Briscoe*, 2020 WL 291361, at *4. None of Plaintiff's "common questions" is subject to a common answer.

- Whether Plaintiff and Class Members paid premiums in exchange for all-risk property policies containing Business Income, Extra Expense, and Civil Authority coverage;

This question is superficial. To meet the requirements of commonality, a question must be of such importance that it is "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. In *Dukes*, the Supreme Court held that questions like "Do all of us plaintiffs indeed work for Wal-Mart" are "not sufficient to obtain class certification." *Id.* at 349-50; *see also Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d 481, 497 (7th Cir. 2012) (rejecting "superficial common questions – like whether each class member is an MPS student"). The class definitions presume coverage. (SAC ¶¶ 51-51) While non-payment of premiums may be an individual defense to a given insured, it is not the type of question that will drive the litigation.

Additionally, whether each putative class member paid premiums is subject to an individualized analysis and will require individualized proof. "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Day v. Human Ins. Co.*, No. 19 C 3141, 2020 WL 2386761, at *13 (N.D. Ill. Jun. 1, 2020).

- Whether Class Members suffered a covered loss based on the Business Income, Extra Expense, or Civil Authority coverage;

This "common question" is really a statement of the desired ultimate result without consideration of the specific underlying factual and legal analysis. Addressing an analogous argument, the Supreme Court rejected attempts to meet commonality because plaintiffs had "all suffered a violation of the same provision of law." *Wal-Mart*, 564 U.S. at 350 ; *Jamie S. v. Milwaukee Pub. Schools*, 668 F.3d at 497 ("That all the class members have 'suffered' as a result

of disparate individual IDEA child-find violations is not enough; it does not establish that the individual claims have any question of law or fact in common.").

Underscoring the problem, the Court cannot find a covered loss on "each one of the claims in one stroke." *Id.* (quoting *Wal-Mart* 564 U.S. at 350). Instead, it must consider differences in closure orders, state law, policy language, industry, presence of SARS-CoV-2, etc. *See Cates v. Whirlpool Corp.*, 2017 WL 1862640, at *19 (N.D. Ill. May 9, 2017) (while the "critical issue of whether the Ovens are defective" is common, "Plaintiffs failed to show that a class wide proceeding will generate common answers and that the most important question in this case can be resolved in one stroke." (internal quotations omitted)); *Alqaq v. Citimortgage, Inc.*, No. 13 C 5130, 2014 WL 1689685, at *5 (N.D. Ill. Apr. 29, 2014) ( "resolution of the issues in this case will require individual inquiry into each purported class member's circumstances").

- Whether Closure Orders triggered a covered loss under the Business Income, Extra Expense, or Civil Authority coverage;

This question suffers the same infirmities as the prior one. "Common questions exist where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Van v. Ford Motor Co.*, 332 F.R.D. 249, 273 (N.D. Ill. 2019) (quotations omitted). Whether state specific closure orders triggered a loss depends on: policy language, the closure order, the insured's industry, whether the insured made expenditures to mitigate the effect of the interruption, etc. This question is not susceptible to generalized, class-wide proof; it is not a common question.

- Whether Defendant improperly denied claims for coverage under the Business Income, Extra Expense, or Civil Authority coverage based on the position these provisions do not cover Closure Orders;

For there to be an improperly denied claim, there must first be coverage. As discussed, the issue of coverage turns on highly individualized factors.

- Whether Defendant breached its obligations under insurance policies with Business Income, Extra Expense, or Civil Authority coverage by denying claims en masse;

Again, this "common question" turns on the issue of coverage; if there is no coverage, then Citizens did not breach by denying claims.

This question also raises tangential issues that are not "apt to drive the resolution of the litigation," *Wal-Mart*, 564 U.S. at 350, while implicating highly individualized questions requiring third-party discovery as to each insured. This question relates to Plaintiff's request for declaratory relief that Citizen waived "any right it may have had to assert defenses to coverage. . . by issuing a blanket denial, through its agent, without conducting an investigation as required under Illinois law." (SAC ¶¶ 68(b); 68(b) (sic); 74(b))  First, in many instances Illinois law will be inapplicable to members of the putative "nationwide" classes.[11]

Second, this "common question" is predicated on a statement made to Plaintiff by its insurance agent, who Plaintiff (mis)characterizes as Citizen's "agent," that he is "not aware of **any** insurance policy that would provide coverage, this is an industry wide standard."  (SAC ¶ 7) Citizens sells policies through a network of independent agents.  (Ex. 2, ¶3)  Plaintiff has no basis for speculating that all putative class members also communicated with their insurance agents. Ascertaining the veracity of Plaintiff's supposition requires individualized discovery into the

---

[11] Citizens does not concede that even Illinois law would hold that it had waived coverage defenses through an alleged "blanket denial" or that that is what happened in this instance.

communications between each class member and a third-party agent. Plaintiff would also need to show that each insurance agent was an agent for Citizens under the applicable state law.[12]

- Whether Plaintiff and Class Members are entitled to a declaratory judgment that Closure Orders trigger coverage under Business Income, Extra Expense, or Civil Authority coverage;

This question simply rehashes whether there is coverage and fails for the same reasons.

- Whether Plaintiff and Class Members are entitled to attorneys' fees, court costs, and other costs incurred in prosecuting this class action litigation.

Plaintiff seeks a declaration that the class members can recover attorneys' fees pursuant to Illinois law allowing reasonable attorney's fees where an insurance company's actions are "vexatious and unreasonable." *See* SAC ¶ 75(c); 215 ILCS 5/155. This is a superficial issue not "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

Additionally, not all putative members of the nationwide classes will have a right to recovery under Illinois law. Plaintiff will also need to prove to the Court that Citizens acted in an unreasonable or vexatious manner to each insured, which depends on a plethora of highly individualized issues including: the existence of coverage, the nature of any investigation, and the nature of any communications with the specific insureds.

---

[12] Illinois law considers four fact specific factors while Indiana law, for example, considers seven different, fact specific, factors. *Compare Landmark Am. Ins. Co. v. Deerfield Constr., Inc.*, 2017 WL 157858, at *8 (N.D. Ill. Jan. 12, 2017), *with Canopius US Ins., Inc. v. Yanhos, Inc.*, 2017 WL 2930495, at *3 (N.D. Ind. Jul. 10, 2017).

## II.   PLAINTIFF HAS FAILED TO ALLEGE ANY OF THE RULE 23(B) TYPES OF CLASSES.

Plaintiff's putative classes do not fit any of the three types permitted by Rule 23(b).

### 1.   Separate Adjudications of Coverage Claims Do Not Create Incompatible Standards Of Conduct Or Otherwise Impede Non-Parties

The Rule 23(b)(1) allegations fall short of establishing the appropriateness of a class action. There is no "inherent risk of inconsistent results," SAC ¶ 61, that subjects Citizens to "incompatible standards of conduct," or "substantially impair[s] or impede[s]" the ability of non-party insureds from protecting their interests. Rule 23(b)(1). An insurance coverage decision is an inherently individualized question based upon, as discussed above, individualized facts. Certification under Rule 23(b)(1) "should be confined to those cases where there are no, or few, individual questions," but here there are many individual issues discussed above. *Bowe Bell + Howell Co. v. Immco Employees' Ass'n*, 2005 WL 1139645, at *4 (N.D. Ill. May 11, 2005) (quoting *Doe v. Guardian Life Ins. Co.*, 145 F.R.D. 466, 477 (N.D. Ill 1992)). Finally, Rule 23(b)(1) is interpreted narrowly because class members are not afforded an opportunity to opt out, the claims of absent class members are forced to live or die by the resolution of the action. *Id.* at 5.

### 2.   Inconsistent Judgments Would Not Establish Incompatible Standards of Conduct Pursuant to Rule 23(b)(1)(A)

The threat of inconsistent results is insufficient to certify a class pursuant to Rule 23(b)(1)(A). Plaintiff must show that inconsistent results "would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). "Plaintiff must demonstrate potential rulings are inconsistent by placing 'the party opposing the class in a position of being unable to comply with one judgment without violating the terms of another judgment.'" *Bowe Bell +Howell Co.*, 2005 WL 1139645, at *4. Notably, "inconsistent standards

for future conduct are not created because a defendant might be found liable to some plaintiffs and not others." *Bowe Bell +Howell Co.*, 2005 WL 1139645, at *5; *see also Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618, 632-33 (6th Cir. 2011). Here, the obligation to pay out one claim in no way effects any other claim.

Additionally, the vast array of individualized issues minimizes the risk of inconsistencies. "It is fundamental that adjudications cannot be regarded as inconsistent where the facts are distinguishable from individual to individual." *Penn. Chiropractic Ass'n*, 286 F.R.D at 376 (quoting *Hylaszek v. Aetna Life Ins. Co.*, No. 95 C 5961, 1998 WL 381064, at *6 (N.D. Ill. Jul. 1, 1998). Where, as here, "there are numerous, and significant, individual issues inherent in the claims of each proposed class," certification under Rule 23(b)(1)(A) is inappropriate. *Id.*

### 3. Nonparty Class Members Are Not Prevented From Protecting Their Interests Pursuant to Rule 23(b)(1)(B)

"Rule 23(b)(1)(B) permits class certification if separate actions by class members would, as a practical matter, be dispositive of the interests of nonparty class members or substantially impair or impede their ability to protect their interests." *Id.* at 363. The SAC does not allege facts showing that resolution of a claim as to one insured is dispositive of the interests of nonparty class members. This is not surprising, as the only possible impediment is through application of *stare decisis*. "[H]owever, *stare decisis* alone is not a reason to grant certification under Rule 23(b)(1)(B)." *Id.* Resolving Plaintiff's claims apart from other purported class members is not dispositive of their interests, especially given the factual differences amongst the class. This is particularly true as to class members who are not even subject to Illinois law.

4.     **The Class Members Are Not Homogeneous, Thus Barring Certification Under Rule 23(b)(2)**

Plaintiff glosses over the highly individualized nature of each coverage determination, summarily alleging "[f]or purposes of Rule 23(b)(2), Defendant's actions are equally applicable to Plaintiff and Class Members such that the wrongdoing may be addressed by declaratory relief, including a declaratory judgment concerning coverage under Business Income, Extra Expense, or Civil Authority coverage relating to COVID-19." (SAC ¶ 62) The individualized nature of each coverage determination makes certification under Rule 23(b)(2) inappropriate.

> The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.

*Wal-Mart Stores, Inc.*, 564 U.S. at 360. Therefore, "Rule 23(b)(2) operates under the presumption that the interests of the class members are cohesive and homogeneous such that the case will not depend on adjudication of facts particular to any subset of the class or require a remedy that differentiates materially among class members." *Penn. Chiropractic Ass,n*, 286 F.R.D. 376-77 (quoting *Lemon v. Int'l Union of Operating Engr's, Local No. 139*, 219 F.3d 577, 580 (7th Cir. 2000)); *Cates*, 2017 WL 1862640, at *23.

Notably, certifying a class raising individualized issues under Rule 23(b)(2) implicates due process concerns because it does not have the same procedural protections built in for absent class members. *See Lemon*, 219 F.3d at 580. Thus, where individualized issues need to be adjudicated, a putative class member may find themselves robbed of their ability to present the necessary evidence while still being bound by the outcome. *Id.*

The SAC seeks three categories of declaratory relief as to each of the three classes: (1) that there is coverage for losses arising out of the Closure Orders; (2) that Citizens waived its right

to assert defenses to coverage under Illinois law; and (3) that Citizens is obliged to pay attorneys' fees under Illinois law. (SAC ¶¶ 68, 68 (sic), 74) None of these requests for declaratory relief is available on a class wide basis because of the many individualized factors Plaintiff would need to prove. Plaintiff's second and third declaratory judgment requests rely on application of Illinois law which is not universally available to the "nationwide" classes. Further, those requests necessarily turn upon the specific conduct by Citizens in relation to a particular insured. Because the declaratory relief requested cannot be granted or withheld on a class wide basis, the putative class claims under Rule 23(b)(2) should be struck.

### 5. Common Questions Do Not Predominate Over Individualized Issues And a Class Is Not Superior Thus Barring Certification Pursuant To Rule 23(b)(3)

Under 23(b)(3) Plaintiff must show that "common questions predominate over individual factual and legal questions and a class action provides a superior vehicle for adjudication of the plaintiffs' claims." Plaintiff's requested class relief fails both predominance and superiority.

"Predominance is similar to commonality but 'the predominance criterion is far more demanding.' 'The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important that the non-common, aggregation-defeating, individual issues.'" *Cates*, 2017 WL 1862640, at *18.

Plaintiff relies on the same faulty list of "common questions" to establish predominance as it had for commonality. (SAC ¶ 58) As discussed above, each of Plaintiff's allegedly "common" questions fails because it relies upon an individualized analysis. The same is true here. "[P]redominance is not satisfied where liability determinations are individual and fact-intensive." *Huddleston*, 2018 WL 4742097, at *5.

Plaintiff also fails to establish superiority. "A class action is the superior method for managing litigation if no realistic alternative exists." *Van*, 332 F.R.D. at 289 (internal quotations omitted). "'A central question' for evaluating Rule 23(b)(3)'s superiority requirement is the issue of 'manageability.'" *Id.* at 290 (quoting *Williams v. Chartwell Fin. Servs. ltd.*, 204 F.3d 748, 760 (7th Cir. 2000)). Here, a class action is not superior to the alternative – individual suits brought in each insured's home jurisdiction. The simple fact that the classes here implicate varying state laws is dispositive of the question of superiority. *In re Yasmin and Yaz (Drospirenone) Marketing*, 275 F.R.D. at 275; *see also In re Bridgestone*, 288 F.3d at 1015.

The Court must consider the impact on the absent class members, including "the extent and nature of any litigation concerning the controversy already begun by or against class members." Fed. R. Civ. P. 23(b)(3)(B). Notably, some of the lawsuits involve small highly localized entities for whom being forced to litigate individualized issues in federal court in Illinois is a significant burden. Fed. R. Civ. P. 23(b)(3)(A) (factors include "the class members' interests in individually controlling the prosecution or defense of separate actions.")

## CONCLUSION

For the foregoing reasons, Defendant Citizens Insurance Company of America respectfully requests that this Court grant its Motion to Dismiss and dismiss the SAC in its entirety, with prejudice because the lack of direct physical loss and the operation of the Virus Exclusion cannot be cured by amendment. In the alternative, Citizens asks that the Court grant its Motion to Strike class allegations because Plaintiff has failed to meet the commonality prerequisite and the proposed classes do not fall within any of the Rule 23(b) categories.

Dated: September 8, 2020

Respectfully submitted,

Citizens Insurance Company of America

By:_____ */s/ Todd S. Schenk*_____
One of Its Attorneys

Attorneys for the Defendant, Citizens Insurance Company of America
Todd S. Schenk
Jennifer L. Smith
Tressler LLP
233 S. Wacker Drive, 61st Floor
Chicago, Illinois 60606
312-627-4000
tschenk@tresslerllp.com
jsmith@tresslerllp.com

Michael Menapace (*pro hac vice*)
Robyn E. Gallagher *(pro hac vice*)
Wiggin and Dana LLP
20 Church Street, 16th Floor
Hartford, CT 06103
860-297-3700
mmenapace@wiggin.com
rgallagher@wiggin.com

**CERTIFICATE OF SERVICE**

I hereby certify that on September 8, 2020, a copy of foregoing, Defendant, Citizens Insurance Company of America's Memorandum in Support of its Motion to Dismiss Plaintiff's Second Amended Complaint, or in the Alternative, Strike Plaintiff's Class Allegations, was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the notice of electronic filing. Parties may access this filing through the court's cm/ecf system.

TRESSLER, LLP

By:    */s/ Todd S. Schenk*
        Attorney for Defendant
        Citizens Insurance Company of America

Attorneys for the Defendant, Citizens Insurance Company of America
Todd S. Schenk
Jennifer L. Smith
Tressler LLP
233 S. Wacker Drive, 61st Floor
Chicago, Illinois 60606
312-627-4000
tschenk@tresslerllp.com
jsmith@tresslerllp.com

Michael Menapace (*pro hac vice*)
Robyn E. Gallagher *(pro hac vice*)
Wiggin and Dana LLP
20 Church Street, 16th Floor
Hartford, CT 06103
860-297-3700
mmenapace@wiggin.com
rgallagher@wiggin.com