**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IMAGE DENTAL, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 20-cv-02759 |
| ) | |
| v. ) | Hon. Steven C. Seeger |
| ) | |
| CITIZENS INSURANCE ) | |
| COMPANY OF AMERICA, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Image Dental, LLC lost business during the COVID-19 pandemic, when people largely stopped going to the dentist. It submitted a claim for coverage to its insurance carrier, Defendant Citizens Insurance Company of America, under a policy that covers certain types of losses of business income. The insurer denied the claim, prompting Image Dental to file suit.

Citizens filed a motion to dismiss, arguing that the policy in question does not cover business losses caused by the pandemic. For the reasons stated below, the motion to dismiss is granted.

**Background**

Image Dental owns and operates dental offices in the Chicagoland area. *See* Second Am. Cplt., at ¶ 1 (Dckt. No. 32). Image Dental mostly provides elective procedures, such as routine check-ups and teeth cleanings, to its patients. *Id.*

Like so many businesses, Image Dental suffered losses during the coronavirus pandemic. Elective dental work was deemed "non-essential" during the shutdown. *Id.* So, when the Governor of Illinois prohibited non-essential health procedures to curb the spread of the virus,

Image Dental stopped its in-person operations. *Id.* at ¶¶ 1, 35; *see also* Executive Order 2020-10 (Dckt. No. 42-3). And needless to say, dental procedures take place in person.

Image Dental had an insurance policy issued by Citizens. *See* Second Am. Cplt., at ¶ 6 (Dckt. No. 32); Policy No. OBC-H180952-00 ("Policy")[1] (Dckt. No. 42-1). The policy provided coverage for the "direct physical loss of or damage to" property:

> SECTION I – PROPERTY
>
> A.   Coverage
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

*See* Policy, at 49 of 282 (Dckt. No. 42-1). The phrase "Covered Cause of Loss" means "[r]isks of direct physical loss," unless an exclusion or limitation applies. *Id.* at 51.

The policy defined "Covered Property" to include "Buildings" and "Business Personal Property." *Id.* at 49. "Buildings," in turn, means "the buildings and structures at the premises," plus completed additions, fixtures, permanently installed machinery and equipment, and so on. *Id.* "Business Personal Property" includes things like property used to run the business. *Id.*

The policy also included a section entitled "Additional Coverage," which covered losses relating to debris removal, water damage, the collapse of a building, and so forth. *Id.* at 55 of 282. One of the "Addition[s]" is Business Income Coverage. *Id.* The policy covered business losses caused by direct physical loss of or damage to the premises:

---

[1] While Image Dental did not attach a copy of the policy to its Second Amended Complaint, the document is clearly central to the complaint and referred to in it, so the Court may consider the Policy when ruling on a motion to dismiss. *See Amin Ijbara Equity Corp. v. Vill. of Oak Lawn*, 860 F.3d 489, 493 n.2 (7th Cir. 2017) ("When ruling on a motion to dismiss, the court may consider 'documents . . . attached to the complaint, documents . . . central to the complaint and . . . referred to in it, and information that is properly subject to judicial notice.'") (quoting *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013)). There is no dispute that the copy of the policy that Citizens provided to the Court is authentic.

2

> 5. Additional Coverages
>
> . . .
>
> f. Business Income
>
> When Business Income Coverage is provided under this policy:
>
>> (a) We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of your "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to a described premises shown in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.*

The Business Income Coverage included extra expenses incurred as a result of direct physical loss or damage to the property. But as before, a "physical loss or damage to property" was a necessary hook for coverage:

> g. Extra Expense
>
> When Business Income Coverage is provided under this Coverage Form:
>
>> (1) We will pay the necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

*Id.* at 57 of 282.

The Business Income Coverage also applied to business losses caused by government authorities that limit access to the property. Once again, a "direct physical loss or damage" to property – here, property within one mile of the dental office – was a necessary element for coverage:

> i. Civil Authority
>
> When Business Income Coverage is provided under this Coverage Form:
>
> > (1) When a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises due to direct physical loss or damage to the property within one mile of the described premises, provided that both of the following apply:
> >
> > > (a) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage . . .
> > >
> > > (b) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

*Id.* at 58 of 282.

The policy also included a number of exclusions for things like war, volcanoes, nuclear radiation, and so on. *Id.* at 85 ("We will not pay for loss or damage caused directly or indirectly by any of the following."). Two of the exclusions are in play here.

One of the exclusions was the "Ordinance or Law" exclusion. There is no coverage for losses from the "enforcement of or compliance with any ordinance or law: (a) Regulating the construction, use or repair of any property; or (b) Requiring the tearing down of any property, including the cost of removing its debris." *Id.* The policy contained a "Virus" exclusion, too. The policy does not cover loss or damage "caused directly or indirectly" by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." *Id.* at 87.

4

Image Dental "cease[d] most of its operations" during the pandemic as a result of the shutdown orders, and thus suffered a significant loss of business. *See* Second Am. Cplt., at ¶¶ 1, 48 (Dckt. No. 32). Image Dental turned to its insurance carrier to recoup its losses.

Citizens, in turn, denied the claim. An insurance agent offered the following explanation: "Your Business Owners Policy does not extend coverage for the [loss of] business income due to the Coronavirus. We are not aware of **any** insurance policy that would provide coverage, this is an industry wide standard. Business or BI is covered within the BOP, but only when it's <u>triggered</u> by a **direct physical loss** to the insured property." *Id.* at ¶ 49 (emphasis in original letter); *see also* 3/17/20 Email (Dckt. No. 31).

This suit followed. Image Dental seeks a declaratory judgment that it is entitled to coverage for the business losses caused by the shutdown orders. What's more, Image Dental claims that Citizens has improperly denied coverage to other policyholders, too. So Image Dental brings claims on behalf of itself and three putative classes. The classes track the language of the policy: there is a Business Interruption Class (Count I), a Civil Authority Class (Count II), and an Extra Expense Class (Count III). *See* Second Am. Cplt., at ¶¶ 51–53 (Dckt. No. 32).

Citizens moved to dismiss on two grounds. *See generally* Mtn. (Dckt. No. 38). First, Citizens argues that the policy only applies when there is "direct physical loss of or damage to a property," and a shutdown from the Governor's COVID-19 Orders does not qualify. *See* Mem. in Support of Mtn. to Dismiss, at 8 (Dckt. No. 42). Second, Citizens argues that, even if Image Dental's COVID-19-related losses were covered under the policy, the exclusions preclude coverage. *Id.*

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. *See* Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *See AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must provide the defendant with fair notice of the basis for the claim, and it must be facially plausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A court normally cannot consider extrinsic evidence without converting a motion to dismiss into a motion for summary judgment. *See Hecker v. Deere & Co.*, 556 F.3d 575, 582–83 (7th Cir. 2009). But when a complaint refers to a document that is central to the plaintiff's claims, the Court may consider it when ruling on a motion to dismiss. *Id.* The Court may also take judicial notice of matters of public record. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997).

**Discussion**

The parties agree that Illinois law governs the Court's interpretation of the insurance policy at issue. "Under Illinois law, an insurance policy is a contract, and the general rules governing the interpretation of other types of contracts also govern the interpretation of insurance policies." *Essex Ins. Co. v. RHO Chem. Co., Inc.*, 145 F. Supp. 3d 780, 788 (N.D. Ill.

6

2015) (quoting *Westfield Ins. Co. v. Vandenberg*, 796 F.3d 773, 777 (7th Cir. 2015)) (cleaned up).

"Like any contract under Illinois law, an insurance policy is construed according to the plain and ordinary meaning of its unambiguous terms." *Id.* (quoting *Schuchman v. State Auto Property and Cas. Ins. Co.*, 773 F.3d 231, 235 (7th Cir. 2013)) (internal quotation marks omitted). The "usual and ordinary" meaning of a phrase is "'that meaning which the particular language conveys to the popular mind, to most people, to the average, ordinary, normal [person], to a reasonable [person], to persons with usual and ordinary understanding, to a business [person], or to a lay[person].'" *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 154 Ill. 2d 90, 180 Ill. Dec. 691, 607 N.E.2d 1204, 1216 (1992) (quoting 2 Couch on Insurance 2d § 15:18 (rev. ed. 1984)); *see also Gillen v. State Farm Mut. Auto Ins. Co.*, 215 Ill. 2d 381, 294 Ill. Dec. 163, 830 N.E.2d 575, 582 (2005) ("Undefined terms will be given their plain, ordinary and popular meaning, *i.e.,* they will be construed with reference to the average, ordinary, normal, reasonable person.").

I. **The Scope of Coverage**

Citizens argues that the policy does not cover Image Dental's business losses from the pandemic because it did not suffer a physical loss of or damage to property. The Court agrees.

As a general matter, it is important to bear in mind what type of policy Image Dental purchased. Image Dental believes that it purchased an "all risk" policy that "cover[s] all damage from all sources unless specifically excluded." *See* Second Am. Cplt., at ¶ 15 (Dckt. No. 32). But that's not what the policy says.

Image Dental did not buy "business interruption insurance," writ large. That is, Image Dental did not purchase a policy that covers anything and everything that interrupts its business.

7

It purchased a specific type of policy that covered a specific type of risk. The policy covered business losses in limited circumstances, and those circumstances do not include a loss of business without a physical harm.

The policy is chockfull of textual clues that there must be loss of or damage to a thing, meaning a tangible object. Consider, for starters, the heading: "PROPERTY." *See* Policy, at 55. The policy covers *property*. The scope-of-coverage provision builds on that clue, and requires a physical problem with a physical object. "We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." *Id.*

Not just any loss or damage will do. It must be a "physical" loss or damage. *Id.* The policy requires a direct *physical* harm or deprivation. *See Physical*, Black's Law Dictionary (11th ed. 2019) (def. 2) (defining "physical" as "[o]f, relating to, or involving material things; pertaining to real, tangible objects"); *Physical*, Webster's Third New International Dictionary (1993) (def. 2b) (defining "physical" as "of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary").

Something *physical* must cause the loss – that is, the reason for the deprivation must be physical in nature. It is not enough if the deprivation involves something physical. *See Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, 2021 WL 1208969, at *2 (N.D. Ill. 2021) ("So 'physical loss' refers to a deprivation caused by a tangible or concrete change in or to the thing that is lost."); 10A Couch on Insurance § 148:46 (3d ed. 2021) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct,

8

demonstrable, physical alteration of the property."). The nature of the loss must be *physical*, not intangible, immaterial, economic, or regulatory.

And the loss or damage must be to "Covered Property." *See* Policy, at 55 of 282 (Dckt. No. 42-1). The definition of "Covered Property" is a long list of *things*. It applies to "buildings," "structures," "additions," "fixtures," "[m]achinery," "[e]quipment," "personal property in apartment, rooms or common areas," "[f]ire protection equipment," "[o]utdoor furniture," "[f]loor coverings," and so on. *Id.*

Everything in that list is a physical object – a real-world, tangible thing. The policy covers "physical" loss of or damage to those physical objects. And without a physical change or alteration of some kind to those physical objects, there is no coverage. A "physical loss" of property does not mean a mere inability to run a business.

Image Dental does not allege that its buildings or belongings suffered any physical harm. There is no indication in the complaint that COVID-19 caused any physical change to any of the dental offices. The virus did not harm the buildings or anything inside them. *See Sharde Harvey, DDS, PLLC v. Sentinel Ins. Co.*, 2021 WL 1034259, at *9 (S.D.N.Y. 2021) ("COVID-19 damages lungs, not property.") (citation omitted). Image Dental may have shut its doors, but it does not allege that it suffered so much as chipped paint.

At some point in the spring of 2020, as the pandemic began to rage, the dentists at Image Dental turned off the lights, shut the doors, and went home for the night. The next day, whenever it was, they did not come back. The dental offices stayed shut because the Governor ordered them closed. So the buildings sat there, quiet, without activity. Did the buildings suffer physical damage or physical loss when they stayed shut? Image Dental never alleges that they did, so Image Dental does not allege a basis for coverage.

The policy does provide coverage for certain types of business income losses. But if anything, the provisions reinforce the fact that there is no coverage unless an object suffers a physical injury. The policy covers "actual loss of Business Income" due to the "suspension" of "operations" during a "period of restoration." *Id.* Read in isolation, that sentence might suggest that there could be coverage.

But the surrounding text tethers coverage to something physical. "The 'suspension' must be caused by direct physical loss of or damage to a described premises." *Id.* And the "loss or damage must be caused by or result from a Covered Cause of Loss," meaning "[r]isks of direct physical loss." *Id.* at 51, 55. So the policy covers the loss of business income caused by physical loss or damage. That's different than the loss of business income caused by anything and everything. Image Dental's reading would, in effect, rewrite the policy and wipe away the requirement of something physical happening to property.

The other provisions about business income losses reinforce the point. The policy covers extra expenses, meaning expenses that "you would not have incurred if there had been no direct physical loss or damage to property at the described premises." *Id.* at 57. Once again, the "loss or damage must be caused by or result from a Covered Cause of Loss," meaning "[r]isks of direct physical loss." *Id.* at 51, 57.

The policy also covers the loss of business income from decisions by civil authorities who "prohibit[] access to the described premises due to direct physical loss or damage to property within one mile of the described premises." *Id.* at 58. So, if there is physical damage to a nearby property, and the authorities make a decision that causes business losses, there can be coverage. But once again, the same prerequisite makes an appearance: there must be "physical loss or damage to property," meaning property in the general neighborhood. *Id.* Lest there be

10

any doubt, the sentence begins with the phrase "[w]hen a Covered Cause of Loss causes damage to property," and thus incorporates once again the requirement of physical harm. *Id.*; *see also id.* at 51 (defining "Covered Cause of Loss" to mean "[r]isks of direct physical loss").

Even the time period for Business Income Coverage reinforces the need for physical damage. The policy covers the loss of business income "during the 'period of restoration.'" *Id.* at 55. The "Period of Restoration" ends when the property is "repaired, rebuilt or replaced," or when the business resumes at a "new permanent location" (or when there is an exhaustion of the number of consecutive months on the declarations page). *Id.* at 102. All of those words reflect hands-on physicality, meaning fixing physical damage or moving elsewhere.

Image Dental puts forward snippets of the policy in isolation, cutting bits and pieces of the policy and removing them from their broader context. *See* Resp., at 12 (Dckt. No. 43). It is true that the policy covers the loss of business income from "suspension of your 'operations," meaning a "partial shutdown or complete cessation of your business." *See* Policy, at 55 (Dckt. No. 42-1). And it is true that there is coverage when the insured suffers a loss of income caused by "action of civil authority that prohibits access to the described premises." *Id.* at 58. But each time, the coverage comes with a caveat. There is coverage if and only if there is "direct physical loss or damage" to real-world property. *Id.* at 55, 58. And here, Image Dental alleges no such thing.

Reading the policy to require physical harm to a physical object tracks with the Illinois Supreme Court's decision in *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 197 Ill. 2d 278, 258 Ill. Dec. 792, 757 N.E.2d 481 (2001). There, the Illinois Supreme Court addressed the meaning of the phrase "physical injury to tangible property." *Id.* at 495–96. The Court followed the natural language and gave it a plain meaning. *Id.* at 496 ("[W]e must afford the unambiguous policy

11

terms their plain, ordinary and popular meaning."). "Physical" means what an average person thinks it means. "We conclude that, to the average, ordinary person, tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color or in other material dimension. Conversely, to the average mind, tangible property does not experience 'physical' injury if that property suffers intangible damage, such as diminution in value . . . ." *Id.*; *see also id.* at 500 ("[U]nder the plain meaning of the word, a 'physical' injury occurs when property is altered in appearance, shape, color or in other material dimension, and does not take place upon the occurrence of an economic injury, such as diminution in value.").

So too here. Image Dental does not allege that there was a physical problem with or change to any of its buildings or belongings. It simply alleges that it suffered a financial loss from shutting its doors. That's an "economic injury," *id.*, but it is not a *physical* loss of or damage to property.

Image Dental tries to stretch the language of the policy beyond its natural meaning. In its view, "loss" includes "loss of use." *See* Resp., at 9–11 (Dckt. No. 43). Not so. Loss and loss of use do not mean the same thing. By way of illustration, the loss of a car does not mean the same thing as the loss of *use* of a car. Ask any grounded teenager.

Sometimes a loss of use can come from a physical loss. For example, an insured could suffer a loss of use of a car if it is totaled in a car accident, or if someone steals it. But there are times when a loss of use could come from something else, too. For example, a driver could drop his keys in Lake Michigan. That's a loss of the keys, but only a loss of use of the car. Under the policy in question, a *physical* loss is a *sine qua non* of coverage. A loss of use without a physical loss doesn't count.[2]

---

[2] The Court directed the parties to file a word-searchable version of the policy. *See* Policy (Dckt. No. 53). The Court discovered that, in many other places, the policy expressly uses the phrase "loss of use."

12

Courts in this district have concluded that comparable property damage policies do not cover purely economic losses caused by the shutdown during the pandemic. *See, e.g., Chief of Staff LLC v. Hiscox Ins. Co. Inc.*, 2021 WL 1208969, at *4 (N.D. Ill. 2021) ("In sum, the policy's Business Income provision does not apply where, as here, a government closure order prohibits access to a business's premises for reasons unconnected to any change in the physical condition of those premises, or in the physical condition or location of property at those premises."); *Sandy Point Dental, PC v. Cincinnati Ins. Co.*, 488 F. Supp. 3d 690, 694 (N.D. Ill. 2020) ("The coronavirus does not physically alter the appearance, shape, color, structure, or other material dimension of the property. Consequently, plaintiff has failed to plead a direct physical loss – a prerequisite for coverage."); *Bradley Hotel Corp. v. Aspen Specialty Ins. Co.*, 2020 WL 7889047, at *3 (N.D. Ill. 2020) (noting that the "overwhelming majority of courts" have "found no coverage when interpreting similar contractual language").

Many other courts across the country have reached the same conclusion: there is no coverage for loss of use without a physical loss. *See, e.g., Green Beginnings, LLC v. West Bend Ins. Co.*, 2021 WL 2210116, at *4–5 (E.D. Wis. 2021) (noting that courts have reached the near-

---

*See, e.g.,* Policy at 41, 87, 97, 112, 121, 143, 168, 224, 255, 256, 267, 277 of 282; *see also id.* at 113 of 282 (referring to damages from the "loss of, loss of use of, damage to" electronic data). A number of those references appear in the section about liability coverage, not property damage coverage, so perhaps the meaning is not the same. *See, e.g., id.* at 112, 121 of 282. But the property damage section does include one reference to "loss of use." It says:

> 2. We will not pay for loss or damage caused by or resulting from any of the following:
>
>    a. Consequential Losses
>
>    Delay, loss of use or loss of market, however caused.

*Id.* at 87 of 282. Citizens did not move to dismiss based on that language, so the Court does not hang its decision on that provision. Still, the appearance of the phrase "loss of use" in some parts of the policy, and the absence of a reference to it in the scope-of-coverage provision, informs this Court's understanding of the phrase "direct physical loss of or damage to" property.

13

uniform conclusion that "'direct physical loss' requires more than just the temporary loss of use of the insured's property"); *Moody v. Hartford Financial Group, Inc.*, 2021 WL 135897, at *6 (E.D. Pa. 2021) (rejecting the notion that "mere loss of use untethered to the physical condition of its property suffices"); *Monday Restaurants, LLC v. Intrepid Ins. Co.*, 2021 WL 2222692, at *4 (E.D. Mo. 2021) ("Plaintiff's allegations do not fall within the ordinary meaning of 'direct physical loss of property.' A plain reading of this phrase requires plaintiffs to allege some *physical* element impacting their property, not just loss of intended use without any physical impact on the property.") (emphasis in original); *Nguyen v. Travelers Cas. Ins. Co. of Am.*, 2021 WL 2184878, at *11 (W.D. Wash. 2021) ("This Court finds that, in arguing that direct physical loss covers loss of income in these circumstances, Plaintiffs conflate physical loss with non-physical loss of use. Detrimental economic impact, however, does not trigger coverage under the property insurance here at issue."); *Caribe Rest. & Nightclub, Inc. v. Topa Ins. Co.*, 2021 WL 1338439, at *3 (C.D. Cal. 2021) ("Several courts in this jurisdiction have recently considered cases with facts nearly identical to this one, and these courts have reached a consensus – where an insurance policy conditions recovery on 'direct physical los or damage,' *economic business impairments* caused by COVID-19 safety orders *do not fall within the scope of coverage*.") (emphasis in original); *SAS Int'l, Ltd. v. General Star Indem. Co.*, 2021 WL 664043, at *3 (D. Mass. 2021) ("[C]onstruing the language 'physical loss of' to cover the deprivation of a property's *use* absent any tangible damage to the property distorts the plain meaning of the Policy.") (emphasis in original); *Food for Thought Caterers Corp. v. Sentinel Ins. Co.*, 2021 WL 860345, at *4 (S.D.N.Y. 2021) ("[T]he great majority of courts that have addressed this issue of insurance coverage for business losses sustained as a result of COVID-19 restrictions have held that a complaint which only alleges use of the insured property fails to satisfy the requirement for

14

physical damage or loss."); *El Novillo Rest. v. Certain Underwriters at Lloyd's, London*, 2020 WL 7251362, at *6 (S.D. Fla. 2020) ("[F]ederal district courts throughout the country have dismissed substantially similar COVID-19-related lawsuits for failing to state a claim for business income coverage.").

After the shutdown orders, "many businesses have brought lawsuits claiming entitlement to coverage under provisions materially similar" to the one at hand. *See Michael Cetta, Inc. v. Admiral Indem. Co.*, 2020 WL 7321405, at *8 (S.D.N.Y. 2020). "And nearly every court to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger busines income coverage premised on physical loss to property." *Id.*

Image Dental thinks that "loss" and "damage" mean different things, as reflected in the use of the disjunctive phrase "physical loss of or damage to" property. *See* Resp., at 14 (Dckt. No. 43). True enough. It covers loss *or* damage. So, it would cover a building that went up in flames (a total loss), or a building that was hit by a cement truck (damaging the bricks). But the fact that "loss" and "damage" cover different ground does not mean that "loss" means any type of "loss of use." A loss of use without a *physical* loss is not covered.

Image Dental does not allege that it suffered a scratch from the pandemic, so it has no claim for coverage for "direct physical loss of or damage to" property.

**II. The Exclusions**

The policy does not cover Image Dental's loss of business income because it did not suffer a physical loss of or damage to property. But even if the scope-of-coverage provision reached that far, the result would not change. The exclusions would preclude coverage.

Two exclusions are relevant here. First, the policy contains an Ordinance or Law exclusion, which states that Citizens "will not pay for loss or damage caused by . . . [t]he

15

enforcement of or compliance with any ordinance or law . . . regulating the construction, use, or repair of any property." *See* Policy, at 85 of 282 (Dckt. No. 42-1). And the exclusion applies "whether the loss results from [a]n ordinance or law that is enforced even if the property has not been damaged." *Id.*

Image Dental alleges that it suffered a loss from Executive Orders regulating the use of its property. The Second Amended Complaint specifically mentions two orders issued by the Governor of Illinois to stem the spread of the virus. *See* Second Am. Cplt., at ¶ 35 (Dckt. No. 32) ("In response to the pandemic, and the spread of the coronavirus in Chicago and throughout Illinois, Illinois Governor Pritzker issued Executive Order 2020-10 on March 20, 2020 ordering all 'non-essential' businesses to close and allowing individuals to leave their residence only to perform tasks 'essential to their health and safety.'"); *id.* at ¶ 45 ("On April 30, Executive Order 2020-32 extended the prohibition on non-essential services until May 29, 2020.").

Image Dental alleges that it suffered business losses from the "Closure Orders." *Id.* at ¶ 45; *see also id.* at ¶ 47 ("The Closure Orders limit and restrict business hours; require closure of certain businesses altogether; limit services that may be performed; and deny physical use of the property to Plaintiff and Class members."); *id.* at ¶ 48 ("As a result of the Closure Orders, Plaintiff and other Class Members lost business income and incurred extra expense."). The Second Amended Complaint squarely alleges that the losses stemmed from a legal directive regulating the use of its property, and thus the Ordinance or Law exclusion applies.

The Virus exclusion applies, too. *See 100 Orchard Street, LLC v. The Travelers Indem. Ins. Co.*, 2021 WL 2333244, at *2 (S.D.N.Y. 2021) ("[T]he Policy contains a Virus Exclusion Clause that independently and unambiguously bars coverage of Orchard Street's business losses at issue.") (construing comparable language). That provision says that the insurer "will not pay

for loss or damage caused directly or indirectly by any of the following. . . . Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress illness or disease." *See* Policy, at 85, 87 of 282 (Dckt. No. 42-1). The exclusion applies to losses caused "directly or indirectly by" any excluded category. *Id.* at 85. COVID-19 is a virus. Since the Governor issued the shutdown orders to curb the spread of COVID-19, the virus was at least indirectly responsible for Image Dental's inability to legally use its property. So, the Virus exclusion also applies.

Image Dental does not muster much of an argument against the exclusions. Instead, it makes a general argument that it would be "premature" to apply them at the motion to dismiss stage. *See* Resp., at 24 (Dckt. No. 43) ("Quite simply, a full factual record is necessary to determine what coverages would be excluded here."). But Image Dental offers no specifics. It does not say what facts would be necessary to inform the Court's analysis or, more fundamentally, what factual development could potentially overcome the policy's plain and unambiguous language.

Image Dental also tries to argue against the applicability of the Virus exclusion by distinguishing the "pandemic" from the "virus." *Id*. ("However, Image Dental specifically alleges that its losses were caused by the <u>pandemic</u> and resulting government orders, neither of which are explicitly excluded by the Policy. Had Citizens intended to include a pandemic, it should have explicitly included such language in the Policy.") (emphasis in original). But that argument goes nowhere. True, the policy does not mention a "pandemic." But it does mention losses caused "directly or indirectly" by a "virus." So, in the event of a pandemic caused by a virus, the policy's language brings us to the same place.

17

Image Dental tries a similar tack with respect to the Ordinance or Law exclusion. Image Dental suggests that there may be losses that "are the result of the orders – as opposed to the pandemic." *Id.* at 24–25. But here too, as long as the losses at issue were even "indirectly" caused by the operation of some law or ordinance, then Image Dental's claims were properly excluded according to the policy's plain text. Image Dental cannot separate the "pandemic" from the virus that caused it.

## Conclusion

The Court grants the motion to dismiss. Image Dental has already amended its complaint twice, and the Court finds that amending the complaint yet again would be futile. *See* Fed. R. Civ. P. 15(a)(2). The Court will enter judgment against Image Dental.

Date: June 11, 2021

Steven C. Seeger
United States District Judge